59 So.2d 563

**McMILLAN et al. v. DOZIER.**

**3 Div. 596.**

Supreme Court of Alabama.

April 17, 1952.

Rehearing Denied June 26, 1952.

Rushton, Stakely & Johnston, Montgomery, for appellee.

———————

Wm. J. Fuller and Wm. J. Fuller, Jr., and Lawrence J. Fassman, Jr., all of Montgomery, for appellants.

LAWSON, Justice.

On April 24, 1947, the Dixie Provision Company, Inc., a corporation, executed its mortgage and notes to the Union Bank & Trust Company of Montgomery to secure a loan by the bank to it in the sum of $50,000. The Dixie Provision Company, Inc., a corporation, will be referred to hereafter as the Dixie Company. The mortgage was of the "open-end" type, containing a provision to the effect that any additional sums loaned the Dixie Company by the bank would be secured by the mortgage. The packing plant of the Dixie Company was then under construction and all its stockholders by separate written instrument guaranteed repayment of the indebtedness to the bank to the extent of $50,000, the amount of the initial loan. As to the extent of liability of each of the stockholders, the instrument of guaranty provided:

"It is understood and agreed, however, that the guaranty of each of said parties shall extend only to the percentage set out opposite his or her name below, which percentage represents the proportion of the capital stock of said Dixie Provision Company owned by each of the undersigned."

As of August 19, 1947, the Dixie Company owed the bank $62,000. It had exhausted the proceeds of the bank loans and the funds derived from the sale of its capital stock in the construction of the plant. Additional funds were needed to complete the plant, which funds could not be obtained from the bank.

A joint meeting of the stockholders and directors of the Dixie Company was held on August 19, 1947. S. A. Douglas, one of the stockholders, was president of the Dixie Company and at this meeting he explained its financial difficulties and stated that he had been negotiating with W. A. Dozier of Hurtsboro, Alabama, for a loan of $150,000 "on the security of the personal endorsement of the stockholders, plus a transfer of the existing 'open-end' mortgage then held by the Union Bank & Trust Company." The following resolution was adopted at this meeting:

"Be It Resolved that the officers of the Company are hereby authorized to enter into a financing contract with W. A. Dozier of Hurtsboro, Alabama, on substantially the following terms:

"Witnesseth:

"Whereas, The Provision Company has nearly completed its plants in North Montgomery and is about to go into production, and desires to borrow money as needed for said purposes, and

"Whereas, said Dozier desires to furnish said money as needed in accordance with the terms hereinafter provided;

"It Is Therefore mutually agreed:

"1. Dozier will lend the Company as required by it the sum of not exceeding One Hundred Fifty Thousand and No/100 ($150,000.00) Dollars.

"2. One Hundred Thousand and No/100 ($100,000.00) Dollars of said sum less 3,800.00 Dollars commission is to be made available by Dozier on the date of this agreement and additional sums in units of Five Thousand and No/100 ($5,000.00) Dollars or multiples thereof within thirty days after requisition by The Provision Company.

"3. As security the Provision Co. will cause the transfer to Dozier of the existing open-end mortgage upon the plant and its equipment now held by the Union Bank & Trust Co. Montgomery, Alabama, and will execute to Dozier the note of the Company in an amount equal to One Hundred Thousand and No/100 Dollars ($100,-000.00) minus the amount of the indebtedness presently secured by said mortgage. Said note to bear five per cent (5%) interest on the net amount and to be secured by said mortgage. As additional sums are furnished additional notes bearing the same rate of interest will be executed and delivered

and added to said mortgage debt. Ten per cent (10%) of the total principal amount due Dozier plus interest to date on all sums received will be repaid to Dozier on each anniversary of this agreement, beginning with the second until all indebtedness is fully paid.

"4. The Company reserves the right to pay all the indebtedness hereby secured or any part thereof in units of Five Thousand and No/100 ($5,000.00) Dollars or multiples thereof on 30 days notice."

It is to be noted that although the president of the Dixie Company, S. A. Douglas, in advising the other stockholders of his negotiations with W. A. Dozier stated that the loan from Dozier, if obtained, was to be secured in part by the "personal endorsement" of the stockholders, the resolution authorizing the officers of the Company to enter into a financing contract with Dozier contained no such provision.

S. A. Douglas continued his negotiations with W. A. Dozier and on August 29, 1947, he signed under the seal of the Dixie Company a written financing agreement with Dozier whereby Dozier agreed to lend the Dixie Company, not $150,000 as discussed in the meeting of August 19, 1947, but the sum of $100,000 "as of September 1, 1947," to be repaid in ten installments of $10,000 each, beginning September 1, 1948, with interest at the annual rate of five per cent on unpaid balance. The only part of this financing agreement set out in the record is paragraph 3, which reads:

"As security the company will cause to be transferred to Dozier the existing open end mortgage upon its plant and equipment now held by the Union Bank & Trust Company of Montgomery, Alabama, and recorded in Book 611, pages 125–129 in the Office of the Judge of Probate in Montgomery County, Alabama. It is agreed between the parties that for the amount of indebtedness secured by said mortgage the amount, due dates and rate hereinabove specified in paragraph 1 are in addition and in substitution for the indebtedness presently secured thereby, but that no other change in the lien, terms or other conditions thereof, nor in the proportionate liability of the endorsers thereon is intended to or shall be made or effected. In addition an appropriate resolution of the stockholders and directors and of each individual stockholder will be adopted ratifying this agreement and all the terms hereof."

On the following day, August 30, 1947, W. A. Dozier turned over to the Dixie Company the sum of $96,200, the amount of the loan less the commission. This sum was deposited in the Dixie Company's account at the Union Bank & Trust Company. On the same day the bank sold, assigned and transferred its mortgage to Dozier, without recourse. The mortgage, the notes, and the guaranty of the stockholders which had been executed to the bank under date of April 24, 1947, and certain insurance policies upon the mortgaged property were delivered to Dozier with the instrument transferring the mortgage. It appears that the bank was paid with a part of the money furnished by Dozier and deposited in the bank in the Dixie Company's account.

Thereafter on September 9, 1947, pursuant to due notice, a meeting of the stockholders and directors of the Dixie Company was held and the following document was signed by the directors and stockholders:

"Be It Resolved by the stockholders and directors of the Company that, whereas, heretofore, on August 19, 1947, the officers of this Company were authorized and directed to enter into a financing contract with W. A. Dozier of Hurtsboro, Alabama, a copy of which appears upon the corporate minutes of the Company for that date, and

"Whereas, it proved impossible to negotiate with said W. A. Dozier a contract substantially in the terms of said resolution, and

"Whereas, another contract has been negotiated with the said W. A. Dozier by the Officers of the Company, copy of which is hereto attached marked Exhibit 'A', and

"Whereas, said contract is satisfactory to the stockholders and directors of the Company;

"Now, Therefore, be it resolved that the stockholders of the Company acting in their respective capacities and each stockholder of the Company in his or her individual capacity does hereby ratify said substituted contract hereto attached, marked Exhibit 'A', and does each for himself agree that prorata guaranty of the performance of the conditions of the mortgage in the payment of the substituted amount, substituted due date and at the substituted rate of interest and all its other terms are hereby accepted and adopted as the contract of each individual stockholder.

"And each of the stockholders and directors do hereby waive notice of the special meeting of stockholders and of directors at which this resolution is adopted and this individual liability is undertaken."

The stockholders signed the following instrument, dated September 9, 1947, which was shortly thereafter delivered to the lender, W. A. Dozier:

"State of Alabama }
Montgomery County }

"Know All Men by These Presents: That the undersigned being all the stockholders of Dixie Provision Company, Inc., for value received of W. A. Dozier, Hurtsboro, Alabama, do hereby unconditionally guarantee the payment, principal and interest, of those certain mortgage notes in the principal sum of One Hundred Thousand Dollars ($100,-000.00), dated 1 September 1947, and of the notes bearing interest at the rate of five per cent (5%) on the balances due after that date, given by Dixie Provision Company, Inc., to said W. A. Dozier and secured by mortgage recorded in Book 611, page 125, in the Probate Office of Montgomery County Alabama.

"It is understood and agreed, however, that the guarantee of each of the said parties shall extend only to the percentage of said indebtedness which represents the proportion of the capital stock of said Dixie Provision Company, Inc., owned by each of the undersigned.

"Each of the undersigned specifically waives all exemptions to which he or she may be entitled under the laws of the State of Alabama in regard to the above described indebtedness.

"Witness our hands and seals this 9th day of September, 1947."

Before this instrument was signed, S. A. Douglas, President of the Company, explained to each stockholder the purport of the instrument and told them it was for the purpose of securing the money obtained from Dozier and making the mortgage good. The validity of the signature of each of the stockholders is admitted and no stockholder repudiated the financing agreement made by Douglas. None of the stockholders except S. A. Douglas had any conversation directly with Dozier relative to the loan.

The plant was finished with the use of the money supplied by Dozier. It was in operation for a short time. The first installment of principal and interest was paid to Dozier on September 1, 1948, but when the second payment fell due on September 1, 1949, the Company was unable to pay.

Thereafter this suit was filed in the circuit court of Montgomery County, in equity, by W. A. Dozier against the Dixie Company and each of its stockholders. The purpose of the suit was to secure the foreclosure of the mortgage of the Dixie Company and the sale of the property covered thereby, and to obtain a deficiency decree against the stockholders as guarantors of the corporate indebtedness in the event the property covered by the mortgage could not be sold for an amount sufficient to pay off the balance due on the mortgage and the expense of sale.

The stockholders separately denied any liability as guarantors of the indebtedness of the corporation under the guaranty agreement bearing date of September 9, 1947, on the ground that it was without consideration as to each of them.

After hearing the evidence orally, the trial court entered a decree directing the

register to sell the mortgaged property and decreeing the stockholders liable as guarantors if the amount received from the sale of the mortgaged property was insufficient to pay the indebtedness to Dozier.

The mortgaged property was sold on June 28, 1950. It is admitted that the sale was conducted properly in all respects. The sale price was $81,000.

On July 13, 1950, the trial court, by final decree, confirmed the sale, and after making provision for the payment of costs, attorneys' fees and other expenses, applied $67,-347.37 to the indebtedness and entered a deficiency decree against the stockholders for the remainder of the indebtedness. The amount which each individual stockholder is required to pay is based on the formula provided in the instrument of guaranty.

From the final decree eight of the stockholders have appealed to this court. They are Thomas E. McMillan, S. A. Douglas, Mrs. Lucile B. Douglas, Horton J. Greene, Mrs. Dorothy D. Greene, John T. Pagel, Jr., Mrs. John T. Pagel, Jr., and J. W. Wells.

There are eight assignments of error, one for each of the appellants. They all go to the same legal question. Typical of all of them is no. 7:

"The court erred in entering a deficiency judgment against the Appellant Thomas E. McMillan, individually, in that it is apparent from the foregoing transcript that there was no consideration for his execution of the agreement whereby the corporate indebtedness of Dixie Provision Company, Inc., a corporation, was purportedly guaranteed by said Appellant, individually."

The case is submitted here on an abridged record. § 773, Title 7, Code 1940; Supreme Court Rules 28 and 30, Code 1940, Tit. 7, Appendix. The facts presented to the trial court are agreed upon. Hence we are not concerned here with the problem of weighing the evidence, and though the evidence was taken *ore tenus*, there is no field of operation for the application of the rule of presumption attending the trial court's find-

ing on disputed evidence. Turner v. Turner, 251 Ala. 295, 37 So.2d 186.

Our inquiry is limited to the question, Did the trial court err in its application of the governing principles of law to the facts as agreed upon?

Appellants do not in any wise challenge the validity of the guaranty executed in favor of the Union Bank & Trust Company. It is the agreement of September 9, 1947, which they contend is invalid because without consideration. As to the contention of appellants, it is said on page 4 of their brief filed in this court:

"No contention is made that the document [instrument bearing date of September 9, 1947, signed by all the stockholders guaranteeing payment of the indebtedness of the company to Dozier] was not properly understood and voluntarily executed as *additional security* for the company's debt to Dozier. The sole question involved on this appeal is the consideration for each of the signatures of the appellants, as individual guarantors." (Emphasis supplied.)

■ Appellants, in support of their contention that the guaranty agreement of September 9, 1947, is invalid because without consideration, rely upon the following Alabama cases: Jackson v. Lancaster, 213 Ala. 97, 104 So. 19; Dilworth v. Holmes Furniture & Vehicle Co., 183 Ala. 608, 62 So. 812; Savage v. First National Bank, 112 Ala. 508, 20 So. 398; Hood v. Robbins, 98 Ala. 484, 13 So. 574; Zadek v. Forcheimer, 16 Ala.App. 347, 77 So. 941. The holdings in those cases follow the general rule sustained by the great weight of authority that the undertaking of one not a party to the original transaction who, in pursuance of some subsequent arrangement, signs an instrument as surety, grantor or endorser, after the original contract has been fully executed and delivered and without agreement at the time of the execution of the original contract that additional security would be furnished, is a new and independent contract and to be binding must be supported by a new consideration, independent from that of the original contract.

We do not think the rule stated above has application to the instant case, for as we view the record the contract of the Dixie Company was not completely effective in law prior to the time the guaranty agreement was signed. The contract and guaranty agreement seem to us to have been parts of the same transaction, finally executed on the same day and, hence, there was no necessity for any independent consideration for the execution of the guaranty agreement. Where the contract of guaranty is made before or at the same time as the principal contract, and both contracts form parts of the same transaction, one consideration is sufficient for both the principal and the collateral contract and there need not be any other consideration than that moving between the guarantee and the principal obligor under the principal contract. Brandon v. Pittman, 117 Fla. 678, 158 So. 443; 38 C.J.S., Guaranty, § 26(b), page 1163.

By virtue of the resolution of August 19, 1947, the officers of the Dixie Company were authorized to enter into a "financing contract" with Dozier only on the terms and conditions expressed therein. Douglas, as President of the Company, sought to have Dozier enter into such a contract. He was unsuccessful. Douglas had no authority to bind the corporation, its directors or stockholders in the so-called "financing agreement" under date of August 29, 1947, which he signed under the seal of the Dixie Company, and which was not in accord with the authority conferred on him by the resolution of August 19, 1947.

A president of a corporation has no greater power by virtue of his office merely than any other director of the company, except that he is presiding officer of the meetings of the board. The implied power of the presiding officer of the corporation is dependent upon the nature of the company's business and the measure of "liability" delegated to him by the board of directors. Sampson v. Fox, 109 Ala. 662, 19 So. 896; Clark v. Minge, 187 Ala. 97, 65 So. 832.

We have not overlooked the principle that the presence of the seal of the corporation establishes prima facie that the instrument to which it is affixed is the act of the corporation, and dispenses with the necessity of any proof on the part of the person claiming under it that it was executed by the proper officers of the corporation or that they had authority to so execute it or that all proceedings necessary to legalize its execution were had, unless the corporation shall have first refuted the presumption arising from the presence of the seal. Amerson v. Corona Coal & Iron Co., 194 Ala. 175, 69 So. 601; H. G. Hill Co. v. Taylor, 232 Ala. 471, 168 So. 693. But this presumption, in view of the record in this case, cannot be said to operate to show an executed contract on the part of Dozier and the Dixie Company as of August 29, 1947, the day on which the so-called "financing agreement" was executed. The record not only shows that Douglas had been authorized to negotiate with Dozier only in substantial accordance with the specific instructions given to him by the directors and stockholders, but the instrument itself shows that Douglas was without authority to bind the Dixie Company to meet the terms and conditions prescribed in the "financing agreement." This lack of authority was recognized by Dozier and Douglas, as evidence by the last sentence of Section 3 of said "financing agreement" which reads: "In addition an appropriate resolution of the stockholders and directors and of each individual stockholder will be adopted ratifying this agreement and all the terms hereof." Likewise, the resolution of September 7, 1947, wherein the directors and stockholders ratified the contract of August 29, 1947, shows that the contract of August 29 was not in substantial compliance with the terms of the resolution of August 19, 1947. Dozier and Douglas both were signers of the resolution ratifying the contract.

The record shows that after the contract was signed on August 29, 1947, and before its ratification on September 7, 1947, Dozier's money went into the account of the Dixie Company in the Union Bank & Trust Company; the bank sold, assigned and transferred its mortgage to Dozier and notes of the Dixie Company were given to

442

Dozier. Appellants insist these facts show an executed contract. We cannot agree. The bank had the right to transfer the mortgage, as we understand the record, without the approval of the Dixie Company. But we can find no authority for the acceptance of the money and execution of the notes prior to the time the contract was ratified. To us the whole record indicates the necessity for ratification by the stockholders and directors before there could be an executed contract.

In our opinion there was no completed contract until on September 9, 1947, when the directors and stockholders ratified the so-called "financing agreement" of August 29, 1947. It is significant to note that the ratifying resolution itself contains language to the effect that the directors and stockholders guaranteed the payment to Dozier of what is referred to as "the substituted amount." This, when considered in connection with other parts of the record, can only mean that they guaranteed in the ratifying resolution the payment to Dozier of the sum of $100,000. The guaranty agreement which appellants claim was without consideration was signed on the same day as the resolution ratifying the financing agreement of August 29, 1947.

It is our opinion that the contract of August 29, the resolution of September 9, 1947, ratifying that contract, as well as the resolution bearing the same date expressly guaranteeing the payment, were all parts of one continuing transaction and that the guaranty agreement was not a new and independent undertaking requiring a new consideration.

The appellants argue one other question in brief, but it cannot be treated on this appeal inasmuch as there is no assignment of error raising that point.

The decree is affirmed.

Affirmed.

LIVINGSTON, C. J., and FOSTER and SIMPSON, JJ., concur.