133 So.2d 383

**STATE of Alabama ex rel. ATTY. GEN.**

v.

**Rex M. WARD, as Administrator, etc.**

**6 Div. 619.**

Supreme Court of Alabama.

Sept. 28, 1961.

MacDonald Gallion, Atty. Gen., and W. G. O'Rear, John D. Bonham and Bert S. Nettles, Asst. Attys. Gen., for appellant.

Bankhead & Petree, Jasper, for appellee.

PER CURIAM.

The majority of the court concur in that part of the opinion of Justice Goodwyn, appearing below, holding that the injunction suit was not a suit pending "to enforce or test the validity" of the title. However, they do not concur in that part

dealing with the question whether the principle of estoppel is applicable to the State, and express their view on that question as follows:

■ Assuming, without deciding, that the principle of estoppel is applicable to the State, we are nevertheless of the opinion that the facts and circumstances of this case are not sufficient to justify application of said principle. Accordingly, the decree appealed from is due to be reversed and the cause remanded.

Reversed and remanded.

LIVINGSTON, C. J., and LAWSON, STAKELY and MERRILL, JJ., concur.

SIMPSON and GOODWYN, JJ., dissent.

GOODWYN, Justice (dissenting).

On May 15, 1951, the state, pursuant to Code 1940, Tit. 7, § 1109, et seq., filed a bill of complaint in the circuit court of Winston County, in equity, to quiet title to the NE ¼ of the NW ¼ of Sect. 14, Tp. 12 S., R. 9 W., located in Winston County. The bill alleges that the respondent, John M. Ward, claims or is reputed to claim some right, title or interest in, or encumbrance upon, said lands, and that "there is no suit now pending to enforce or test the validity of such title, claim or encumbrance." Although § 1109 provides that complainant shall be in peaceable possession of the lands, the state is authorized by § 1115 to maintain a suit to quiet title whether in possession or not.

The respondent demurred to the bill on the grounds that it is without equity, that complainant has an adequate remedy at law and that, for aught appearing, the complainant is not in peaceable possession of the lands. The demurrer was overruled.

The respondent then answered the bill alleging that complainant is not in possession of said lands but that he, the respondent, "and his predecessors in title for over fifty years have been in open, notorious, adverse and peaceable possession of said lands; that the lands * * * have been owned by the respondent and his predecessors in title since prior to the year 1888 and that said owners have paid taxes on said lands each and every year down to the current tax year."

The answer denies the allegation of the bill that no suit was pending to enforce or test respondent's title and alleges that complainant filed such a suit in the circuit court of Winston County, in equity, on May 14, 1951, the day prior to the filing of the instant suit, and that said suit was pending at the time of the filing of the instant suit.

Apparently, the evidence was taken orally before the trial court. However, by agreement of the parties there has been an abridgment of the record by including therein an agreed statement of facts in lieu of the actual evidence submitted to the trial court. See: Code 1940, Tit. 7, § 773; Supreme Court Rule 26, 261 Ala. XIX, XXIX; McMillan v. Dozier, 257 Ala. 435, 440, 59 So.2d 563. This agreed statement of facts, in pertinent parts, is as follows:

"* * * The lands described in the bill of complaint were granted to the State of Alabama on March 2, 1889, by the United States of America as 'School Indemnity Lands' and the Secretary of State of the State of Alabama certified that according to the records of her office, the State of Alabama has not parted with its title to said tract of land. The 'Tract Book' for Winston County on file in the records of the probate office of said County, contains a recital of the fact that a patent issued from the U.S.A. to the State of Alabama on said lands as school lands.

"It is agreed that the tax assessment records in the Courthouse at Double Springs, Alabama, indicate that the

subject lands were assessed from 1891 to date as follows:

"1891   W. M. Kaieser
1892   W. M. Kaieser
1893–1894   Not Assessed
1895–1896   Not Assessed
1897   Mrs. W. H. Fuller
1898   Owner Unknown
1899–1900   "   "
1901   E. W. Coleman
1902   "   "   "
1903–04   "   "   "
1905   N. S. Coleman
1906   Mrs. E. W. Coleman
1907–08–09–10   Mrs. E. W. Coleman
1911   "   "   "   "
1912–13–14   "   "   "   "
1915   "   "   "   "
1916   "   "   "   "
1917   "   "   "   "
1918   "   "   "   "
1919   "   "   "   "
1920– to 1947 in-
    clusive   Mrs. E. W. Coleman
1948   Murphy Cagle
1949   Murphy Cagle
1950   Murphy Cagle
1951   Murphy Cagle
1952 to 1959   John M. Ward

"It is agreed that John M. Ward, Murphy Cagle and the Colemans paid ad valorem taxes on said lands for each year they assessed the same.

"Attached hereto and marked Exhibits 'A' and 'B', and made a part hereof as if set out herein in full, are abstract copies of tax sales on said lands for taxes for the years 1899 and 1900, the tax sale for the taxes of 1899 being made to E. W. Coleman and the tax sale for taxes of 1900 being made to the State but was redeemed by N. S. Coleman on June 17, 1905. N. S. Coleman is one and the same person as Nannie S. Coleman, the wife and later widow of E. W. Coleman.

"On June 18, 1902, a tax deed was issued on said lands to E. W. Coleman by R. L. Blanton, as Probate Judge of said County, said tax deed reciting that on the 21st day of May, 1900, the lands in question were duly sold by the tax collector of said County for taxes, costs and expenses, that at said sale E. W. Coleman became the purchaser thereof, a copy of said deed being attached hereto, marked Exhibit 'C' and made a part hereof as if set out herein in full.

"On June 6, 1950, a quit-claim deed on said lands was executed by the widow and heirs of E. W. Coleman to Murphy Cagle, a copy of said deed being attached hereto as exhibit 'D' and made a part hereof as if set out herein in full.

"On May 7, 1951, a quit-claim deed was executed by Murphy Cagle and wife to John Ward on said lands, a copy of said deed being attached hereto, marked Exhibit 'E', and made a part hereof as if set out herein in full.

"It is agreed that John M. Ward, Murphy Cagle and the Colemans had adverse possession of the property from 1900 until 1951 when a Bill for Injunction and a Bill to Quiet Title were brought by the State of Alabama.

"When John Ward commenced to cut timber on the lands in question in 1951, he was enjoined from any further timber cutting by writ of injunction from the Circuit Court of Winston County, Alabama, In Equity, under Bill for Injunction brought by the State of Alabama. Said Bill for Injunction was a companion case to the Bill to Quiet Title, which is the basis of this appeal. The Bill for Injunction, case No. 304, was filed May 14, 1951, the day before the filing of said Bill to Quiet Title, case No. 305. A copy of said Bill for Injunction is attached hereto, marked Exhibit 'F' and made a part hereof as if set out herein in full.

"At the time of the purchase of said lands by John M. Ward from Murphy Cagle, there was nothing in the records

of the probate office, tax assessor's office and tax collector's office to indicate that said lands were State school lands other than the entry in the 'Tract Book' of Winston County.

"Said lands are unimproved timber land with no houses, structures or other improvements thereon whatsoever."

The bill for injunction (case No. 304; exhibit "F" to the agreed statement of facts) alleges that the state is the owner of the lands and that "the respondent claims to have some interest in all or parts" thereof and "is engaged in the cutting of timber therefrom." It also alleges "that there is now pending in this Honorable Court a bill in equity to quiet title to said land." Apparently, it was intended either to file the bill to quiet title prior to filing the injunction suit or to file both suits at the same time. However, as already noted, the injunction suit was actually filed the day before the filing of the bill to quiet title.

The trial court rendered a final decree on March 4, 1960, holding respondent to be the owner of the lands and that the state "has no right, title, interest in, or encumbrance upon" said lands or any part thereof. The decree also enjoined both parties, "and any and all persons claiming through or under them," from cutting any timber until the decree "becomes final through lapse of time for taking an appeal, or the final decision of this cause on appeal." The state brings this appeal from that decree, questioning only that part holding the respondent to be the owner of the lands. The record discloses no action taken by the trial court in the injunction suit.

Section 1109, Tit. 7, supra, prescribes, as a condition to the filing of a bill thereunder, that there be no suit pending "to enforce or test the validity of such title, claim or encumbrance." A threshold question, therefore, is whether the bill for injunction, having been filed the day before the filing of the bill to quiet title, is such a suit. It is our view that it is not. See:

Irwin v. Shoemaker, 205 Ala. 13, 15, 16, 88 So. 129; Camp v. Conner, 205 Ala. 468, 469, 88 So. 578; Cullman Property Co. v. H. H. Hitt Lumber Co., 201 Ala. 150, 157, 77 So. 574; Mobile County v. Knapp, 200 Ala. 114, 115, 75 So. 881; Driver v. New, 175 Ala. 655, 658, 57 So. 437; Hamilton v. Brent Lumber Co., 127 Ala. 78, 84, 28 So. 698; Ashurst v. McKenzie, 92 Ala. 484, 490-491, 9 So. 262; 28 Am.Jur., Injunctions, § 75, p. 572; 43 C.J.S. Injunctions § 54, p. 513. Although a permanent injunction is prayed for, it seems apparent that the purpose of the injunction suit was simply to prohibit the further cutting of timber until ownership of the lands could be determined in the suit to quiet title. As pointed out in the cited authorities, injunction ordinarily is not a proper remedy for the trial and establishment of a disputed title to land, but a temporary injunction may be granted to preserve the status quo until the rights of the parties can be determined in an appropriate proceeding.

Clearly, the injunction suit here does not come within an exception to the stated rule, as discussed in some of the cited authorities, so as to permit the title to the lands to be enforced or tested in such suit. Accordingly, the injunction suit is not an obstacle to maintenance of the bill to quiet title.

It seems clear that the decree quieting title was based on application of the doctrine of "equitable estoppel" or "estoppel in pais". (These terms are generally used interchangeably as being applicable to estoppels which are not those by record or by deed. 19 Am.Jur., Estoppel, § 33, p. 633; Ballentine's Law Dict., 2nd Ed. p. 453.) So, the question to be decided is whether it was proper to apply such doctrine to the state under the particular facts and circumstances of this case. Our view is that it was.

We note that appellee makes no insistence that he acquired title by adverse possession. Indeed, the holding in Grissom v. State, 254 Ala. 218, 222, 48 So.2d 197, is determinative

of any such question in the case before us. See, also, Code 1940, Tit. 7, § 16, the predecessor of which became effective at the same time as did the Code of 1907, viz.: May 1, 1908. Grissom v. State, supra.

While it has been held that estoppels against the state are not favored (Capital Transport Co. v. Alabama Public Service Commission, 268 Ala. 416, 108 So.2d 156; Union Central Life Ins. Co. v. State, 226 Ala. 420, 147 So. 187; State ex rel. Lott v. Brewer, 64 Ala. 287), it has also been said that, in effectuating the principle "denying relief in equity which is not equitable, our court, in common with prevailing authorities generally, applies the doctrine of estoppel in pais even against the state or its governing subdivision[s]." Brown v. Tuskegee Light & Power Co., 232 Ala. 361, 367, 368, 168 So. 159, 165. In Powell v. City of Birmingham, 258 Ala. 159, 166, 167, 61 So. 2d 11, 17, suit was brought to quiet title to real property which the city had bought to satisfy a delinquent street improvement assessment and lien. No effort was made by the city to assert its claim for eleven years "and then not by due process of law but by intermeddling with complainant's agents handling said property." "At no time was complainant's possession through the tenants terminated." It was there said:

" * * * It cannot be doubted that the respondent in dealing with the property in question was dealing in its corporate capacity with respect to its proprietary rights therein and not in its strict governmental capacity. Brown v. Tuskegee Light & Power Co., 232 Ala. 361, 168 So. 159; City of Birmingham v. Whitworth, 218 Ala. 603, 119 So. 841; City of Montgomery v. Quinn, 246 Ala. 154, 19 So.2d 529.

"It is without dispute in the evidence that the respondent city delayed for more than eleven years to assert its alleged title and claim to the property in question and in the meantime the complainant regularly assessed the property for state, county and municipal taxes and paid the same. Such taxes were distributed to the different agencies of government, including the taxes due to the respondent city, which it accepted without question.

"It also appears that the respondent on August 2, 1927, after its alleged purchase of the property, levied an assessment against the property in question as the property of complainant for water, toilet facilities and sanitary connections, which assessment was paid by complainant and accepted by the respondent, with knowledge of all the facts.

* * * * * *

"It is well settled that although there is no limitation of time within which a municipal corporation must sue for the recovery of lands claimed to be owned by it, the same result as a bar of the statute of limitations may be effected by the application of equitable estoppel in pais to be applied through courts of equity where the facts and circumstances, in the judgment of the court, warrants its application. 31 C.J.S., Estoppel, § 138, page 403; Brown v. Tuskegee Light & Power Co., 232 Ala. 361, 168 So. 159; State ex rel. Martin v. City of Gadsden, 216 Ala. 243, 113 So. 6; State ex rel. Roberson v. Town of Pell City, 157 Ala. 380, 47 So. 246; Dillon on Municipal Corporations, (4th Ed.) 675; [State of] Iowa v. Carr, 8 Cir., 191 F. 257, 266. In the last cited case it was observed:

" 'The great weight of authority, the stronger reasons and the settled rule upon this subject in the courts of the United States, is that * * * when a sovereignty submits itself to the jurisdiction of a court of equity and prays its aid, its claims and rights are judicable by every other principle and rule of equity applicable to the claims and rights of private parties under similar circumstances.' See also Utah

Power & Light Co. v. United States, 8 Cir., 230 F. 328.

\* \* \* \* \* \*

"We have not overlooked City of Birmingham v. Lee, 254 Ala. 237, 247, 48 So.2d 47, 55, which holds that, 'Persons dealing with agencies of government are presumed to know the legal limitations upon their power and cannot plead estoppel on the theory that they have been misled as to the extent of that power. City of Mobile v. Mobile Electric Co., 203 Ala. 574, 84 So.

816. No person can claim to have altered his position for the worse by acts or promises which the law warns him he must not depend upon. Whitfield v. Hatch, 235 Ala. 38, 177 So. 149.'

"Nor, that unauthorized assessments for public improvements or taxes will not estop the municipality from setting up a claim of title to the land on which the assessments were made. But where in addition to the levy and collection of taxes, there appear other circumstances rendering it clearly inequitable for the government or one of its subdivisions to claim title, the doctrine of estoppel may be applied. 31 C.J.S. Estoppel, § 147, page 434. Such is the situation presented by the instant record.

"\* \* \* under the facts in this case the City of Birmingham is estopped by its inequitable conduct to assert and claim title to the property in controversy \* \* \*."

From 19 Am.Jur., Estoppel, § 34, p. 634, is the following:

"Equitable estoppel or estoppel in pais is a term applied to a situation where, because of something which he has done or omitted to do, a party is denied the right to plead or prove an otherwise important fact. Any more exact or complete definition than this is difficult to formulate for the reason that an equitable estoppel rests largely on the facts and circumstances of the particular case, and consequently, any attempted definition usually amounts to no more than a declaration of an estoppel under those facts and circumstances. The cases themselves must be looked to and applied by way of analogy rather than rule. \* \* \*"

In Sisson v. Swift, 243 Ala. 289, 303, 9 So.2d 891, 903, it is stated that "estoppel is an equitable doctrine to accomplish justice under the facts and circumstances of each particular case."

In State ex rel. Shartel ex rel. City of Sikeston v. Missouri Utilities Co., supra, 331 Mo. 337, 53 S.W.2d 394, 399, 89 A.L.R. 607, it is said:

"Estoppel is a preclusion in law which prevents one alleging or denying a fact in consequence of his own previous act, allegation, or denial of a contrary tenor. \* \* . \* 'Equitable estoppel, or estoppel in pais, is that condition in which justice forbids that one speak the truth in his own behalf.' \* \* \* It 'stands simply on a rule of law which forecloses one from denying his own expressed or implied admission which has in good faith and in pursuance of its purpose been accepted and acted upon by another.' \* \* \* To constitute estoppel in pais, three things must occur: First, an admission, statement, or act inconsistent with the claim afterwards asserted and sued on; second, action by the other party on the faith of such admission, statement, or act; and, third, injury to such other party, resulting from allowing the first party to contradict or repudiate such admission, statement, or act. \* \* \* While the doctrine of equitable estoppel is not generally applicable to municipal corporations in matters pertaining to governmental functions, yet courts, with much caution, may apply the doctrine in excep-

tional cases where upon all the circumstances of the case right and justice require it."

From Daniell v. Sherrill, Fla., 48 So.2d 736, 739, 23 A.L.R.2d 1410, is the following:

"It should be borne in mind that here the State has come into its courts and impleaded its own citizens and asked that title in the State be quieted against the claims and equities of those citizens. The State is the moving party: it invoked the jurisdiction of a court of equity. The Sovereign, in such a situation is bound by the maxim, 'He who seeks equity must do equity', to the same extent that any citizen would be bound. It has been aptly said: 'If we say with Mr. Justice Holmes, "men must turn square corners when they deal with the Government," it is hard to see why the Government should not be held to a like standard of rectangular rectitude when dealing with its citizens.' 48 Harvard Law Review, 1299. See the case of State of Iowa v. Carr, 8 Cir., 191 F. 257, 266, where the Court said:

" 'But the great weight of authority, the stronger reasons and the settled rule upon this subject in the courts of the United States, is that, while mere delay does not, either by limitation or laches, of itself constitute a bar to suits and claims of a state or of the United States, yet, when a sovereignty submits itself to the jurisdiction of a court of equity and prays its aid, its claims and rights are judicable by *every other principle and rule of equity* applicable to the claims and rights of private parties under similar circumstances.

" 'The equitable claims of a state or of the United States appeal to the conscience of a chancellor with the same, but with no greater or less force than would those of an individual under like circumstances. United States v. Stinson, 197 U.S. 200, 204, 205, 25 S.Ct. 426, 49 L.Ed. 724;' (and citing many other cases).

"In the cited case equitable estoppel to assert title to lands was held to bar the State of Iowa.

"In United States v. Stinson, 7 Cir., 125 F. 907, 910, affirmed 197 U.S. 200, 25 S.Ct. 426, 49 L.Ed. 724, the doctrine of estoppel was applied to the United States, the Court saying: 'The government may not in conscience ask a court of equity to set on foot an inquiry that, under the circumstances of the case, would be an unfair or inequitable inquiry. The substantial considerations underlying the doctrine of estoppel apply to government as well as to individuals. Chope v. Detroit & H. Plank Road Company, 37 Mich. 195, 26 Am. Rep. 512; Commonwealth v. Andre's Heirs, 3 Pick. 224 [20 Mass. 224].' "

Of some significance here is the case of United States v. Property on Pinto Island, D.C.Ala., 74 F.Supp. 92, where it was held that, no claim having ever been asserted by either the State of Alabama or the United States to any part of the area involved from 1859 to 1933, and the littoral owner having begun reclamation in 1906 without obstructing navigation and without objection by either sovereign, both sovereigns were estopped from asserting claim of title and ownership to the reclaimed land.

Although the authorities from other jurisdictions are not of one accord on the subject, some of those supporting the view that the doctrine of "equitable estoppel" or "estoppel in pais" may be applicable to the state or its subdivisions, depending upon the particular facts and circumstances of each case, are as follows: Trustees of Internal Improvement Fund v. Bass, Fla., 67 So.2d 433–434; Florida Livestock Board v. Gladden, Fla., 76 So.2d 291, 293; United States v. County of Lawrence, D.C.Pa., 173 F.Supp. 307, 314–315; California State

Board of Equalization v. Coast Radio Products, 9 Cir., 228 F.2d 520, 525; Durell v. Miles, 53 N.M. 264, 206 P. 547, 550; Piz v. Housing Authority, 132 Colo. 457, 289 P.2d 905, 912, 913; City and County of Denver v. Stackhouse, 135 Colo. 289, 310 P.2d 296, 298; State v. Bryan, Tex.Civ.App., 210 S. W.2d 455, 464; Washington v. McLawhorn, 237 N.C. 449, 454, 75 S.E.2d 402; Lee v. Walker, 234 N.C. 287, 68 S.W.2d 664, 670; City of Quincy v. Sturhahn, 18 Ill.2d 604, 165 N.E.2d 271, 277; State of Illinois v. Illinois Central Railroad Co., 246 Ill. 188, 235, 92 N.E. 814; Lee v. State, 64 N.Y.S.2d 417, 428, 429, 187 Misc. 268; 49 Am.Jur., States, Territories, and Dependencies, §§ 56, 85, pp. 269, 298; 31 C.J.S. Estoppel §§ 138, 140, 147, pp. 403, 404–405, 411, 413, 433, 434.

It seems to us that application of an estoppel against the state is amply justified by the particular facts and circumstances here present, consisting principally of the following:

1. The tax sale of the lands on April 9, 1900, to E. W. Coleman for the 1899 taxes, assessed to "owners unknown." Code 1896, Art. 10, Chap. 110, § 4046 et seq.

2. The tax deed executed by the judge of probate of Winston County on June 18, 1902 (Code 1896, § 4074), conveying said lands to E. W. Coleman, the purchaser at the tax sale on April 9, 1900.

3. The tax sale of the lands to the state for the 1900 taxes.

4. Redemption by N. S. Coleman from the tax sale to the state.

5. Acquiescence by the state in the possession of the lands under the tax deed for approximately 50 years.

6. The assessment and collection of taxes upon the lands for more than 50 years.

7. The adverse possession of the lands by appellee's predecessors in interest for the approximately 8 years immediately prior to the effective date of the 1907 Code, at which time the statute of limitations theretofore applicable to the state for the recovery of land was abolished (see Grissom v. State, supra).

8. The state's failure to refund or offer to refund the taxes collected.

From what we have said it is our view that the decree appealed from should be affirmed.

SIMPSON, J., concurs.