**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Wharton K. BURGREEN et al., Defendants Third-Party Plaintiffs-Appellants,**

v.

**FIRST ALABAMA BANK OF HUNTSVILLE, N. A., a banking corporation formerly known as the First National Bank of Huntsville, Third-Party Defendant-Appellee.**

**No. 76–2731.**

United States Court of Appeals,
Fifth Circuit.

March 15, 1979.

Rehearing Denied April 11, 1979.

---

Edgar E. Smith, Currun C. Humphrey, Huntsville, Ala., for Wharton K. Burgreen.

J. R. Brooks, U. S. Atty., Charles A. Perry, Caryl P. Privett, Asst. U. S. Attys., Birmingham, Ala., for the U. S.

Frank K. Noojin, Huntsville, Ala., for First Ala. Bank of Huntsville.

Before INGRAHAM, GEE and TJO-FLAT, Circuit Judges.

TJOFLAT, Circuit Judge:

The Small Business Administration (SBA), after proceeding against the collateral securing a $200,000 loan, brought this suit [1] for deficiency against the six guarantors of the loan: Wharton K. and Julia S. Burgreen, the appellants; Parks L. and Barbara J. Heaton; and Billy R. and Jane E. Harris. The Burgreens resisted liability, asserting that their guaranty was void for two reasons: it was unsupported by consideration and it was obtained through fraud and duress by the First Alabama Bank of Huntsville, N. A. (Bank), which had participated with SBA in making the loan secured by the guaranty. The same allegations of fraud and duress provided the basis of the Burgreens' third-party action against the Bank for damages. The Burgreens also cross-claimed against the Harrises and Heatons for contribution. The Heatons in turn cross-claimed against the Burgreens for contribution.

Prior to trial the district court summarily disposed of the Burgreens' defense of lack of consideration, finding it insufficient as a matter of law. The case then proceeded to trial before a jury. At the conclusion of all the evidence, the court directed verdicts in favor of the Government against each of the guarantors (except the Harrises, who settled with the Government on the eve of trial) and in favor of the Bank in the third-party action. Directed verdicts were also entered against each of the cross-claimants.

Only the Burgreens have appealed. They question the trial court's disposition of their lack of consideration defense; they also contend that they were entitled to go to the jury with their claims of fraud and duress in the Government's case and in the third-party action. Finally, they cite error in the trial court's calculation of the sums recited in the judgments. We find no merit in any of these contentions and affirm.

1. The United States of America was the named plaintiff, the jurisdiction of the district court being invoked under 28 U.S.C. § 1345 (1976) which provides:

Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress.

## I

The material facts are not in dispute. It is only the parties' characterizations of these facts in legal terms that are in controversy. On November 29, 1966, the Heatons and the Harrises obtained an SBA commitment to provide permanent financing to the Huntsville Flying Service, Inc. (the borrower) in the sum of $100,000 for the purchase of land and the construction of an airport in Huntsville, Alabama. The Heatons and the Harrises owned all the stock, 50–50, of the borrower. Mr. Heaton and Mr. Harris took the commitment to the Bank and, working with Eugene Morgan, its executive vice-president, obtained a $100,000 construction loan. To induce the Bank to make the loan, the Heatons, the Harrises, and the Burgreens jointly and severally executed in favor of the Bank an unconditional guaranty. At the time, it was understood by the three couples that the Burgreens were to acquire a portion of the borrower's stock so that each couple would own a one-third interest in the corporation. This guaranty agreement is set out in the margin.[2] The loan was closed on June 12, 1967, and was evidenced by a note and mortgage executed by the borrower.

It soon became apparent that the borrower needed more than $100,000 to complete the airport. The Bank agreed to provide an additional $100,000, and on October 2, 1967, a note and mortgage for that amount were executed by the borrower. Thereafter, the SBA commitment was altered. In lieu of its earlier agreement to make a $100,000 loan, the SBA agreed to guarantee eighty-seven percent of a $200,000 permanent loan from the Bank to the borrower, the Bank assuming the balance of the risk. The commitment, extending for a period of six months, was dated November 24, 1967.

On March 1, 1968, all the papers necessary to close the permanent loan were signed except the Burgreens' guaranty. After repeated requests by the Bank's vice-president, Mr. Morgan, the Burgreens finally came to the Bank on May 23, 1967, the day before expiration of the SBA commitment. Morgan told the Burgreens that the permanent loan would not be made unless they signed the guaranty. Mr. Burgreen refused and Robert Lowery, the Bank's chief executive officer, intervened. He advised Morgan that the Bank would accept a guaranty for less than the full amount of the loan. Morgan and Mr. Burgreen then

---

2.                   Guaranty

For Value Received and for the purpose of enabling Huntsville Flying Service, Inc. of Huntsville, Alabama to obtain credit from the FIRST NATIONAL BANK OF HUNTSVILLE, Huntsville, Alabama, *the undersigned* hereby *guarantee* prompt *payment* at maturity, or at any other time thereafter, *of any and all indebtedness or obligations upon which said* Huntsville Flying Service, Inc. *now is or may be hereafter at any time become obligated or bound to said FIRST NATIONAL BANK OF HUNTSVILLE,* Huntsville, Alabama, whether said obligations arise by loans, or other extensions, of credit made by and with the consent of said Huntlsville, [sic] Flying Service, Inc. and we agree to pay all costs and expenses incurred by said FIRST NATIONAL BANK OF HUNTSVILLE, Huntsville, Alabama, in enforcing this guaranty, including a reasonable attorney's fee.

This instrument shall remain in full force and effect until notice to the contrary in writing is delivered at the banking house of the said FIRST NATIONAL BANK OF HUNTSVILLE, Huntsville, Alabama, to some executive officer, but no termination shall relieve the parties hereto of any liability on any indebtedness ac-

cruing, or notes made or discounted, prior to the date of said notice of termination. And we do hereby expressly waive demand, notice of protest of any note, draft or other item on which said Huntsville Flying Service, Inc. is bound, or may be liable for payment, whether said obligations be primary or secondary. The FIRST NATIONAL BANK OF HUNTSVILLE, Huntsville, Alabama, may endorse this obligation against the undersigned whenever the indebtedness hereby secured matures, without being required first to exhaust the principal obligor. If more than one person signs this agreement their obligation shall be joint and several.

This guaranty may be assigned along with the obligations secured. In witness whereof we have hereunto set our hands and seals this 8th day of June, 1967.

         /s/ P. L. Heaton
         /s/ Barbara Heaton
         /s/ B. R. Harris
         /s/ Jane E. Harris
         /s/ Wharton K. Burgreen
         /s/ Julia S. Burgreen

Defendant's Exh. No. 3 (emphasis added).

dickered back and forth and the Burgreens finally signed a form guaranty agreement in favor of the Bank and SBA that limited the Burgreens' potential liability to 37.5% of the $200,000 loan. This guaranty is also set out in the margin[3]; it formed the basis of the Government's complaint in the court below. On the day this guaranty was executed, Mr. Burgreen obtained one-third of the borrower's capital stock. The consideration given by Mr. Burgreen for the stock was stated to be the Burgreens' execution of the guaranty in favor of the Bank and SBA.

After these transactions were completed the Burgreens undertook active management of the borrower. On June 23, 1968, Mr. Burgreen acquired the remaining stock of the corporation from the Heatons and Harrises. The loan was kept current for over a year but eventually became delinquent. At the borrower's request the Bank, with SBA's consent, withheld legal action to collect the past due installments. To induce the Bank and SBA to withhold action, a letter, purportedly bearing the Burgreens' signatures, was given to the Bank. The letter stated that the Burgreens would re-main bound by the terms of their May 23, 1968, guaranty even if the other guarantors (the Heatons and the Harrises) failed "to re-guarantee the forbearance." (At trial, Mr. Burgreen denied signing the letter; Mrs. Burgreen remained silent on this point.)

On December 22, 1970, and February 3, 1971, the Bank and the Burgreens (on behalf of the borrower) executed a modification agreement extending the amortization schedule of the loan. Despite the extension, the borrower failed to keep the loan current, and on July 14, 1972, the Bank assigned the loan and guaranty agreements to the SBA. Thereafter, SBA declared the loan in default, accelerated the payments, and made demand for the balance due. On April 3, 1974, the SBA foreclosed the mortgage, and after the foreclosure sale brought this suit for deficiency.

## II

We first address the Burgreens' argument that the trial judge erred in summarily disposing of their defense of lack of consideration. The ruling came on the

---

3.                    GUARANTY
               (Loan Guaranty Plan)
            ~~May 23rd~~ March 1st, 1968
    In order to induce THE FIRST NATIONAL BANK OF HUNTSVILLE (Bank) to make a loan or loans, or renewal or extension thereof, to Huntsville Flying Service, Inc. (Debtor), the undersigned hereby unconditionally guarantees to Bank, its successors and assigns and to the Small Business Administration (SBA) as its interests may appear, the due and punctual payment when due, whether by acceleration or otherwise, in accordance with the terms thereof, [37½ per cent *WKB, JSB*] of the principal of and interest on and all other sums payable, or stated to be payable, with respect to the note of the Debtor, make by the Debtor to Bank, dated ~~5-23-68~~ 3-1-68, in the principal amount of $200,000.00, with interest at the rate of 7½ per cent per annum  .   .  . .

    In case the Debtor shall fail to pay all or any part of the Liabilities when due, whether by acceleration or otherwise, according to the terms of said note, the undersigned, immediately upon the written demand of Bank, will pay to Bank [37½ per cent *WLB, JSB*] the amount due and unpaid by the Debtor as aforesaid, in like manner as if such amount constituted the direct and primary obligation of the undersigned.  .   .   .

            /s/ Wharton K. Burgreen
            /s/ Julia S. Burgreen
*  *  *  *  *  It is understood and agreed that the liability of Wharton K. Burgreen and wife, Julia S. Burgreen is limited to thirty-seven and one half (37½%) per cent of the amount due and unpaid by the Debtor as aforesaid.
Plaintiff's Exh. No. 6 (the notes in brackets are handwritten).

    This form guaranty agreement contains two sets of filled-in dates. In each set the date May 23 is struck through and the date March 1 substituted. The form is also altered to reflect the reduced percentage that was negotiated. The Burgreens' initials appear beside the percentage alterations, but there is no indication on the form as to when and by whom the dates were altered. There is, in any event, no contention that the guaranty does not purport to obligate the Burgreens for 37.5% of the $200,000 loaned by the Bank to Huntsville Flying Service.

Government's motion for summary judgment, and the court had before it, in addition to the pleadings, the affidavit of Robert M. Hartman, chief of the portfolio management division of the Birmingham district office of the SBA, together with attached exhibits including: the March 1, 1968, note; the Heatons', Harrises', and Burgreens' guaranty agreements; a certified statement of account; the stock transfer agreement by which Mr. Burgreen had obtained his interest in the borrower; seven separate demand letters from the SBA to the Burgreens; and the depositions of banker Morgan and the Burgreens. Nothing in the record before the district judge is in conflict with the facts as we have recited them.

The Burgreens argue that consideration for their guaranty was lacking because they signed it two and one-half months after the execution of the other documents that made up the closing of the permanent loan. This guaranty, the argument proceeds, was a new and independent contract and, to be valid, must be supported by new consideration independent from that of the original note. It is true, as the Burgreens urge, that Alabama law[4] is in accord with the general rule that

> the [guaranty] of one not a party to the original transaction who, in pursuance of some subsequent arrangement, signs an instrument as surety, grantor or endorser, after the original contract has been fully executed and delivered and without agreement at the time of the execution of the original contract that additional security would be furnished, is a new and independent contract and to be binding must be supported by a new consideration, independent from that of the original contract.

*McMillan v. Dozier*, 257 Ala. 435, 59 So.2d 563, 567 (1952). But the Burgreens overlook the fact that their guaranty was not given in execution of a new contract; rather, the guaranty was simply the final component in the closing of a permanent loan. There can be no doubt that the Bank required the Burgreens to execute a new guaranty agreement before it would complete closing of the permanent loan. Thus, when the Burgreens finally signed the guaranty in question on May 23, 1968, the transaction was consummated.[5]

Another factor supports the district court's finding that there was adequate consideration for the guaranty.[6] As part of the May 23, 1968, negotiations, the Burgreens received not only a reduction in their liability (*i. e.*, as compared with their exposure of 100% on the temporary, construction-money loans) but Mr. Burgreen also acquired one-third of the borrower's stock

---

4. There is no choice of law clause in the guaranty agreement, but the parties agree that Alabama law controls the present controversy. Although federal law controls the rights and duties of the United States in the context of the SBA loan guaranty program, *United States v. Terrey*, 554 F.2d 685, 692 (5th Cir. 1977), where, as in the case before us, the SBA agrees that state law controls, it is appropriate to look there for our decision, *cf. id.* at 592–93 (SBA contracted that Texas law would apply).

5. In concluding that the loan was closed on May 23, 1968, we have not overlooked the Burgreens' contention that the loan papers (*i. e.*, other than the Burgreens' guaranty) and the checks were dated March 1, 1968. An interest charge was also entered on the books from that date. Our examination of those records, in the light of the evidence that explains them, indicates, conclusively we think, that the March 1 date was used simply because the parties thought the closing would be completed on that date. The fact that the completion of the closing was postponed, without changing the dates on the papers, is of no moment.

6. The United States and the Bank also argue that the May 23 guaranty was subsequently ratified by the Burgreens for adequate consideration in the form of the forbearance agreements of December 20, 1970, and February 3, 1971. *See Phillips v. Malone*, 223 Ala. 381, 136 So. 793, 795 (1931) (subsequent ratification supplies adequate consideration); *Thweatt v. McLeod*, 56 Ala. 375, 378 (1876) (same); *cf. Norvell v. Gilreath*, 189 Ala. 452, 66 So. 635, 637 (1914) (forbearance constitutes consideration). Although this argument appears to have merit, neither the modification agreements nor the Burgreens' request for extensions were before the district judge. We cannot, therefore, consider them in determining whether the lack of consideration defense was properly eliminated by summary judgment.

from the Heatons and the Harrises. The stock transfer agreement, Bank Exh. No. 3, recites that the consideration Mr. Burgreen gave for the stock was his execution of the guaranty in favor of the Bank and SBA. The stock alone is sufficient consideration to defeat the Burgreens' defense as a matter of law. In sum, the district court was correct in striking down the Burgreens' lack of consideration defense.

### III

We now turn to the propriety of the district court's ruling that the Burgreens' claim of fraud and duress was insufficient to go to the jury. *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969) (en banc). In this appeal, the Burgreens characterize fraud and duress as synonymous with "economic compulsion." We have carefully examined the record, and agree with the trial court's view of their defense.

The district judge found that there was "simply no evidence that there was any taint of fraud or duress as the law understands the terms in connection with the execution of [the Burgreens' guaranty agreement]." Record, vol. 2, at 294. As the parties suggest, we must first look to Alabama law to determine what constitutes fraud and duress.

The Alabama legislature has codified the common law actions of fraud and deceit. This legislation is set out in the margin.[7] Essential to a claim of fraud is a material misrepresentation of fact which has lead another to act to his detriment. We do not find in this record anything approaching a misrepresentation of fact on the part of the Bank.

The Burgreens' argument is that Mr. Burgreen thought that the original guaranty was given only to secure Bank financing of airplanes. He admits, however, that he was never told this by the Bank. He also insists that he was initially told that he would not be involved with "the SBA loan." He readily admits, however, that he became involved with the SBA loan. He became involved because he had no other recourse; the Bank would have proceeded against him on the original guaranty to collect $200,000, the balance due on the construction loans. There was no misrepresentation of any fact by the Bank; to the contrary, the Bank was quite blunt about its position. The Burgreens point to no specific facts the Bank may have misstated. The only misrepresentation they have cited is one of *law*, not of fact. They say that the Bank misrepresen-

7. The Code of Alabama (1975) provides in pertinent part:

§ 6–5–100. *Fraud—Right of action generally.*
Fraud by one, accompanied with damage to the party defrauded, in all cases gives a right of action.

§ 6–5–101. *Same—Misrepresentations of material facts.*
Misrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud.

§ 6–5–102. *Suppression of material facts.*
Suppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case.

§ 6–5–103. *Deceit—Right of action generally.*
Willful misrepresentation of a material fact made to induce another to act, and upon which he does act to his injury, will give a right of action. Mere concealment of such a fact, unless done in such a manner as to deceive and mislead, will not support an action. In all cases of deceit, knowledge of a falsehood constitutes an essential element. A fraudulent or reckless representation of facts as true, which the party may not know to be false, if intended to deceive, is equivalent to a knowledge of the falsehood.

§ 6–5–104. *Same—Fraudulent deceit.*
(a) One who willfully deceives another with intent to induce him to alter his position to his injury or risk is liable for any damage which he thereby suffers.
(b) A deceit within the meaning of this section is either:
(1) The suggestion as a fact of that which is not true by one who does not believe it to be true;
(2) The assertion as a fact of that which is not true by one who has no reasonable ground for believing it to be true;
(3) The suppression of a fact by one who is bound to disclose it or who gives information of other facts which are likely to mislead for want of communication of that fact; or
(4) A promise made without any intention of performing it.

ted that it could succeed in obtaining a judgment against them on the original guaranty, when in fact, their argument goes, it would have failed. This argument simply will not pass muster under Alabama law. The statutes, see note 7 *supra,* require a misrepresentation of fact.

The Burgreens' attempt to classify banker Morgan's action, in insisting on their execution of the guaranty as a condition to closing the loan, as duress by business compulsion. They assert that duress is a specie of fraud and business compulsion is a specie of duress. Although we intimate no view as to the correctness of this argument or its applicability in Alabama, we point out briefly that the hornbook references supplied by the Burgreens are inapposite to the facts of this case.

They cite us to 13 *Williston on Contracts* § 1617 (3rd ed. W. Jaeger 1970) for the basic elements of business compulsion. That authority provides:

1. The party alleging economic duress must show that he has been the victim of a wrongful or unlawful act or threat, and
2. Such act or threat must be one which deprives the victim of his unfettered will.

*Id.* at 704 (footnotes omitted). The Burgreens concede that threatening legal process (*e. g.,* a suit by the Bank on the first guaranty) does not generally constitute duress; they submit, however, that such a threat would constitute duress if the claim were known by the one possessing it to be false. Thus, their argument progresses, since the Bank knew that the original guaranty could not successfully be used to collect the balance due on the $200,000 construction loan, the Bank's threat to sue constituted business coercion, business compulsion from the Burgreens' point of view.

■ Given the plain language of the original guaranty, see note 2 *supra,* we have serious doubts as to whether the Burgreens could have defeated a suit by the Bank based thereon. We need not reach this question, however, for there was no evidence adduced indicating that the Bank felt

that the guaranty was unenforceable. The Bank therefore could not have threatened process *knowing* the claim to be false. The treatise cited by the Burgreens further explicates the inapplicability of the developing concept of business compulsion in this case. One of the requirements of this cause of action is that "the party threatened must be compelled to make a disproportionate exchange of values or to give up something for nothing." 13 *Williston on Contracts* § 1617, at 704 (footnotes omitted). Here the Burgreens signed the May 23, 1968, guaranty to avoid at least the possibility of being 100% liable on $200,000 in exchange for a potential liability of only 37.5% of that amount.

The Burgreens have failed to point to any evidence in the record which would justify a jury conclusion that they were the victims of a wrongful act so as to support a claim for fraud or duress, either under the law of Alabama or as they have defined it to include business compulsion. The district judge correctly directed verdicts against them on this defense and on their third-party claim against the Bank.

## IV

■ Three other claims of error are worthy of brief discussion. The first is that the court erred in calculating the Government's judgment against the Heatons. The Burgreens may be correct, but since the Government's judgment against the Heatons is not involved in this appeal we are powerless to remedy any defect in it. In any event the Burgreens are not prejudiced.

The balance due on the borrower's indebtedness after the Harrises were settled out of the case was $105,503.50. The Heatons were liable for 100% of that amount; the Burgreens for 37.5%. The court was correct in calculating the figure inserted in the judgment against the Burgreens. However, the figure in the Heatons' judgment does not represent 100% of the debt, but only 62.5%. The Government is the party injured by the calculation, not the Burgreens; but the Government has not ap-

pealed its judgment against the Heatons. Hence, we have no authority to alter it.

The Burgreens' second point is that they were entitled to recover on their cross-claim against the Heatons. Clearly they were not. The right of contribution does not rise until the Burgreens have satisfied the judgment against them. *Ala.Code* § 8–3–9 (1975).

The third and final point raised by the Burgreens concerns the trial court's exclusion of a memorandum, dated May 24, 1968, signed by J. C. Barksdale, a regional loan officer of SBA. The memorandum merely recites a telephonic request by banker Lowery for SBA approval of the Bank's acquisition of a guaranty to secure the Bank in a greater amount than the SBA in respect to the loan in question. Assuming the admissibility of the document to prove its contents, we fail to see how it would establish any of the Burgreens' defenses.

## V

For the reasons stated, the judgments appealed from are AFFIRMED.