W. S. BRANDON v. HERMIA PITTMAN and LOTTIE HARTSFIELD.

158 So. 443.
Opinion Filed December 18, 1934.
Petition for Rehearing Denied January 16, 1935.

*James H. Finch,* for Plaintiff in Error;

*John H. Carter* and *John H. Carter, Jr.,* for Defendants in Error.

BUFORD, J.—The defendants in error sued the plaintiff in error on a written guarantee which was in the following language:

"SOUTHERN STATES POWER COMPANY
"134 LaFayette Street
"Marianna, Florida

March 31, 1930.

"Miss Hermia Pittman, Marianna, Florida.

"Dear Miss Hermia: Referring to our conversation this morning regarding your Preferred Stock which was purchased by you from the Central Public Service Corporation of Chicago, Ill.

"I will be pleased to personally guarantee this amount, i.e., that the Central Public Service Corporation will be pleased at any time to refund your money within a reasonable length of time for the amount that you have in this stock. Of course, you understand that if you should bring the stock in to us it will take at least six or seven days for you to receive remittance from the Chicago office to cover the amount you have in this stock.

"Very truly yours,

"WSB/w                                  " W. S. BRANDON."

The declaration alleged:

"Hermia Pittman and Lottie Hartsfield as joint tenants with right of survivorship, the plaintiffs, sue W. S. Brandon, the defendant, in an action of assumpsit, to-wit:

"For that the defendant on March 31, 1930, by memorandum in writing signed by him guaranteed the plaintiffs to the amount of $1,995.00 that the Central Public Service Corporation, would at any time refund to the plaintiffs said amount of money which the plaintiffs had then and there invested in thirty-five shares of $4.00 cumulative preferred stock of said Central Public Service Corporation, a copy of which memorandum is hereto attached as Exhibit 'A' and made a part of this declaration. That plaintiffs thereafter made demand for the refund but said Central Public Service Corporation failed and refused to refund said money or any part thereof, and the defendant afterwards upon demand failed and refused to make good his said guarantee, or to pay plaintiffs said amount upon demand.

"Wherefore, plaintiffs sue and claim damages in the sum of $3,000.00."

Demurrer was filed stating four grounds, as follows:

"1. That the declaration of the plaintiffs is vague, indefinite, uncertain, and because of such vagueness, indefiniteness and uncertainty fails to set up a cause of action against this defendant.

"2. It affirmatively appears from the said declaration and letter of guaranty attached thereto and made a part thereof, that the guaranty sued in is that of Central Public Service Corporation and not the individual or personal guaranty of the defendant, W. S. Brandon.

"3. The said declaration is defective in law and insufficient in substance for the reason that it appears that the guaranty sought to be recovered on was limited by its express terms to a refund to be made within a reasonable

length of time, and it is not shown that demand for a refund was made under the terms of said guaranty within a reasonable length of time.

"4. The said declaration is defective in law and insufficient in substance for the reason that it is not shown that there was any consideration whatever for the alleged guaranty."

Demurrer was overruled as to each ground.

Pleas were filed to which demurrer was filed and was overruled as to the second plea, which was a plea of no consideration, and sustained as to the other three pleas.

Another plea was then filed to which demurrer was interposed and sustained.

The defendants then filed a fifth plea to which demurrer was sustained.

In this state of the record the parties went to trial. Trial resulted in judgment in favor of the plaintiffs. Writ of error was sued out and plaintiff in error presented his assignments of error with the bill of exceptions as follows:

"ASSIGNMENT OF ERRORS
"PRESENTED WITH BILL OF EXCEPTIONS

"Now comes the defendant, and at the time of presenting his bill of exceptions to the court, assigns the following errors as having been committed by the court below;

"1. The Court in refusing to direct a verdict for the defendant.

"2. The Court erred in denying the defendant's motion for a new trial."

With directions to the clerk for making up the transcript of the record, he filed additional assignments of error. These assignments challenged the ruling of the court on demurrer to pleas, the refusal of the court to direct a verdict

for the defendant and the ruling of the court in denying
defendant's motion for new trial.

Under these assignments of error the plaintiff in error
has submitted three questions for our determination. The
first and second challenge the sufficiency of the evidence
to sustain the verdict. The third challenges the ruling of
the court in refusing to give a charge requested by the de-
fendant as follows:

"To constitute a consideration in this case, sufficient to
bind the defendant, if you find that the consideration con-
sists of some loss, injury or detriment suffered by the
plaintiffs, then to make it a good consideration it must be
shown that it was a loss, injury or detriment suffered at
the time of the transaction, that is at the time of the writing
of the letter, and not at some later time."

The above quoted charge was properly refused because
it did not properly state the law.

There is substantial evidence in the record to show that
Mr. Brandon personally guaranteed to Miss Pittman that
the corporation issuing the stock would refund her money
paid for the stock at any time she should become dissatisfied
with the purchase thereof. That Miss Pittman was induced
to buy the stock by the making of this guarantee by Mr.
Brandon; that before Miss Pittman received and acknowl-
edged the stock Mr. Brandon gave her his written guar-
antee above quoted. The guarantee was an instrument in
writing not under seal. The consideration therefor was the
closing of the purchase of the stock. Miss Pittman testi-
fied that she would not have purchased the stock and ac-
cepted the same without such guarantee. In 12 R. C. L.,
1077, Sec. 29, the rule is stated thus: "Where a contract of
guaranty is entered into at the time of the creation of the
obligation guaranteed, the same consideration may support
both contracts. In fact, the guaranty and the principal con-

tract may be considered as parts of the same arrangement. Thus, where the payment of a note is guaranteed at the time of its making, the consideration of the note may be sufficient to sustain the guaranty. Likewise, where the holder of an obligation transfers the same with a guaranty of payment the transfer is deemed a sufficient consideration for the guaranty. So, permitting lessees to occupy premises under a lease is sufficient consideration to support a guaranty of the payment of the rent. The delivery of goods, upon the faith of a guaranty that they shall be paid for, constitutes a sufficient consideration for the guaranty. A promise to furnish goods to a third party is a sufficient consideration for a guaranty of payment for both past and future sales. The advancement of money by the creditor to the principal debtor is ample considieration for a guaranty of the repayment of such money. A guaranty, though executed subsequently to the creation of the principal obligation, if given in fulfillment of an agreement on the faith of which the principal obligation was created, is deemed contemporaneous in effect, and requires no other consideration."

See also Ferot, *et al.*, v. Blackwell, 39 Fla. 621, 22 Sou. 892; Jones v. McCannon & Co., 100 Fla. 1158, 130 Sou. 760 and cases there cited.

Plaintiff in error contends that under the terms of the guarantee the plaintiffs failed to maintain their case because the plaintiffs did not exercise the option to return the stock and have their money refunded within the terms of the guarantee in that the demand was not made until early in 1932 while the guaranty was made March 21st, 1930.

This contention is not tenable because the instrument in writing not under seal was good for five years under our statutes and aside from this the record shows that when de-

mand was made Mr. Brandon then assured Miss Pittman that she would get her money back.

Mr. Brandon testified as follows:

"Q. What was the first thing you knew about Miss Hermia subscribing for the stock?

"A. Miss Hermia came to my office and asked if I wouldn't go ahead and guarantee this stock so she could get her money back at any particular time, at any time she was in need of it, and asked me for a written guarantee to that effect. So I gave her a written guarantee that she could secure her money in case she should bring her stock into the office and in case she should need it.

"Q. Did she tell you that had been represented to her when she came to you and asked you to give it to her over your signature?

"By the Court: Don't lead the witness.

"Q. What did she say had been represented to her, if anything, about that? What did Miss Pittman tell you had been represented to her about her ability to get her money back if she bought this stock, did she make any statement about what the agents had said?

"A. No sir, I don't remember any such statement.

"Q. Do you know whether or not she had subscribed to the stock at the time she came to see you?

"A. Yes, sir.

"Q. Where was her subscription, did she have a blank filled out?

"A. It was in the office that morning, Mr. Gurley obtained the subscription.

"Q. Did he have it in his possession?

"A. Yes, he had it in his possession with a deferred check.

"Q. With her check attached?

"A. Yes sir.

"Q. Was it a post dated check she had given?

"A. Yes sir.

"Q. Because her money was on time deposit?

"A. Yes sir, at the First National Bank.

"Q. Go ahead. She came in in the afternoon or morning?

"A. She asked me if I wouldn't go ahead and give her that guarantee. The guarantee was written to Miss Hermia.

"Q. She asked you to give her that letter?

"A. Yes, with the guarantee that the company would refund the money with a personal guarantee, and she wanted that guarantee over my signature.

"Q. You gave it to her?

"A. I gave her the letter, yes sir."

The written guarantee is not without ambiguity. The plaintiff in error contends that the words "within a reasonable length of time" refer to a length of time between the giving of the guarantee and the demand for refund of the money paid for the stock. While the defendant in error contends that those words meant that the money would be refunded within a reasonable length of time after demand was made therefor. The agreement was written by Mr. Brandon and therefore its terms must be construed most strongly against him if the terms are not clear. That the construction placed upon this phrase in the agreement by the defendant in error is the correct construction is borne out by the further language in the instrument itself, to-wit:

"Of course, you understand that if you should bring the stock in to us it will take at least six or seven days for you to receive remittance from the Chicago office to cover the amount you have in this stock."

This construction is further supported · by the fact that the above quoted testimony of Mr. Brandon shows that when Miss Pittman did demand refund of her money he made no contention that her demand was unreasonable or was made after the lapse of a reasonable time for the performance but he then assured her that everything was all right and she would get her money back. On demand being made, however, to the Chicago office, the corporation issuing the stock did not, and probably could not, respond by refunding the money. Miss Pittman brought suit against the corporation and recovered a judgment but failed to recover any money. While negotiations were pending Mr. Brandon advanced to her $335.00 in three installments and when the last installment was delivered to Miss Pittman he took her note for that amount and he states in his testimony that while she gave the note it was understood that she was to pay it when she got her money from the corporation in which she had bought this stock and that he did not charge her any interest on this loan or advancement which he made to her. The jury made allowance for that advancement in the verdict.

The record discloses no reversible error. The judgment should be affirmed and it is so ordered.

Affirmed.

DAVIS, C. J., and WHITFIELD, ELLIS and TERRELL, J. J., concur.

BROWN, J., dissents.