GRIFFIN, J.
 

 Donald Eugene McClune [“Former Husband”] appeals a non-final order in which the trial court found Former Husband to be in indirect civil contempt, awarded Rebecca Anne McClune [“Former Wife”] attorney’s fees, and denied Former Husband’s motion for clarification. The appeal arises out of a dispute between Former Husband and Former Wife over the meaning of certain provisions of their mediated settlement agreement [“MSA”], which was the basis for the consent final judgment that dissolved the parties’ thirteen-year marriage in May 2010. The consent final judgment provides in pertinent part:
 

 5.
 
 RETIREMENT BENEFITS and PENSION PLANS:
 
 The Wife shall receive 50% of the marital portion of the pension, retirement accounts and IRA’s. The Court reserves jurisdiction for entry of necessary Qualified Domestic Relations Orders.
 

 The Wife shall receive all of the Bank of America stock in existence at the time of filing as lump sum alimony and further waives any alimony entitlement.
 

 Prior to the entry of the consent final judgment, each party filed a financial affidavit. Former Husband was a long-time employee of Bank of America. In the assets section of his financial affidavit, under the category Stocks/Bonds, Former Husband listed “Bank of America ESPP” with a value of “21,804.00;” and, under the category of Retirement Plans, he listed “Fidelity IRA” with a value of “212,-373.17;” and a second “Fidelity IRA” with a value of “10,238.08.”
 

 In the assets section of Former Wife’s financial affidavit, Former Wife checked the category Stocks, Bonds, Notes and listed a value of $10,000.00; she checked the category Retirement Plans (Profit Sharing, Pension, IRA, 401(k)s, etc.) and listed Fidelity with a value of $210,000.00; and Bank of America Pension and Stocks and inserted a question mark as to value.
 

 On July 21, 2010, in an amended motion for civil contempt/enforcement, Former Wife asserted in part that Former Husband had failed to comply with paragraph 5 of the MSA:
 

 
 *196
 
 7. Paragraph 5 of the Final Judgment provides in pertinent part that the Former Wife shall receive “all of the Bank of America stock in existence at the time of filing as lump sum alimony.”
 

 8. The Former Husband has refused to provide the Former Wife with all the Bank of America stock. He now claims that “all of the Bank of America stock in existence” does not include the Bank of America stock contained in his 401K account.
 

 Former Husband responded with a motion for section 57.105 attorney’s fees, asserting in part:
 

 6. The Former Wife is to receive a marital share [of] Former Husband’s retirement 401K. This 401K contains Bank of America stock as part of his 401K investment portfolio. This is not individually purchase stock and was not meant to be a part of the “all of the Bank of America stock in existence”. The Former Wife is well aware of the individual stock account specific to Bank of America for which the Former Husband is in the process of transferring to the Wife’s name. Had the Consent Final Judgment intended the Former Wife to have the Bank of America stock in the 401K as well, then the 401K would not have been addressed separately in the manner in which it is currently specified.
 

 On September 17, 2010, the trial court entered an order deferring contempt and requiring compliance with the consent final judgment. The order is not clear about what is to be done or why, however. In a motion for clarification, filed on October 19, 2010, Former Husband asserted:
 

 1. A Consent Final Judgment of Dissolution of Marriage was entered in the above-styled cause on or about May 14, 2010.
 

 2. Pursuant to paragraph 5 of the Consent Final Judgment the Former Wife shall receive “50% of the marital portion of the pension, retirement accounts and IRA’s” which is contradictory to other language in that paragraph that she shall receive “all of the Bank of America stock.”
 

 3. The Former Husband had an employee stock purchase plan from Bank of America containing only Bank of America stock, worth approximately $18,000.00 on 5/14/2010, this is what the parties contemplated as “all of the Bank of America stock” due to the Former Wife as lump sum alimony. Said monies have already been transferred to the Former Wife.
 

 4. The Former Husband had a separate 401(k) that contained some Bank of America stock, the Bank of America stock in the 401(k) was to be divided along the same lines as the remainder of the 401(k), with the Former Wife receiving 50% of the amount accrued during the marriage.
 

 5. It would be unconscionable to award the Former Wife 100% of the Bank of America stock in the 401 (k) because she would receive a grossly disproportionate share of the parties’ assets.
 

 6. If the Former Husband is required to pay the Former Wife all of the Bank of America stock in the 401 (k) plus half of the marital share he would not have sufficient funds remaining to pay her the equity in the marital home in full.
 

 7. The majority of the Bank of America stock in the 401(k) was acquired prior to the marriage.
 

 On October 28, 2010, after conducting a hearing on the parties’ motions, the trial court entered an order finding Former Husband to be in indirect civil contempt; awarding Former Wife attorney’s fees, requiring the parties to re-attend parent education and stabilization class; and de
 
 *197
 
 nying Former Husband’s motion for clarification. The trial court provided in part:
 

 THIS CAUSE came before the Court upon an amended motion for contempt and enforcement. The Court entered its Order on September 17, 2010 requiring the Former Husband to complete all equitable distribution transfers by October 15, 2010. The Former Husband did not even get around to working on this Court Order until October 11th or 12th, three days before the deadline. Nothing has been done other than one payment of $10,000.00 leaving a balance of $53,000.00 due to the Former Wife.
 

 [[Image here]]
 

 The Former Husband is in contempt of this Court’s Order requiring transfer of $53,500.00 as part of a lump sum alimony payment to the Former Wife as contained in paragraph 5, page 3 of the Final Judgment. Ordinarily, failure to equitably distribute funds as required in the Final Judgment does not subject the offending party to contempt but this matter is different, i.e., the Former Wife waived any alimony entitlement and agreed to receive all the Bank of America stock in existence at the time of the filing, i.e., December 30, 2009. In addition, the Court finds that the Former Husband’s efforts at refinancing the home which would resolve this matter have been half-hearted at best. He claims he is in the “finance business” and “knows” that he will not be eligible to refinance his home but has made no formal application, provided the Court with no rejection letter, nothing. This half-hearted effort is pervasive throughout this case.
 

 Although the terms of this MSA appear clear on their face (i.e. the IRAs are to be equitably distributed and the stock account goes to Former Wife as lump sum alimony), the trial judge reached the opposite interpretation based on the extrinsic fact that there is Bank of America stock in the two IRAs. An agreement is ambiguous if it “is susceptible to two different interpretations, each one of which is reasonably inferred from the terms” of the agreement.
 
 Miller v. Kase,
 
 789 So.2d 1095, 1097-98 (Fla. 4th DCA 2001). “A latent ambiguity is said to exist where a contract fails to specify the rights or duties of the parties in certain situations and extrinsic evidence is necessary for interpretation or a choice between two possible meanings.’”
 
 Kirsch v. Kirsch,
 
 933 So.2d 623, 626 (Fla. 4th DCA 2006) (citation omitted).
 

 It is a close question whether Former Wife’s interpretation is reasonable. If the agreement is understood in accordance with Former Husband’s interpretation, the calculation and mechanics of distribution are plain. If, on the other hand, Former Wife’s interpretation is correct, the calculations are varied and obscure. Is Wife to have all of the IRAs valued for purposes of her fifty percent share of the marital portion and then have the Bank of America stock in the IRAs transferred to her? Or is Former Wife to have all the Bank of America stock in the IRAs transferred to her and then receive fifty percent of the marital portion of the IRA residue? The MSA provides that Former Wife is to receive
 
 stock
 
 not the value of the stock, raising questions of feasibility and tax consequences.
 

 We agree with Former Husband that it was error to order all the stock in the IRAs transferred to Former Wife without conducting an evidentiary hearing. Assuming an ambiguity, there are numerous facts that might bear on an accurate interpretation. For example, the record before this Court is unclear concerning the amount of Bank of America stock in either IRA, what part of the IRAs is marital,
 
 *198
 
 whether the stock in the IRAs is transferable, and what the parties intended or negotiated. An evidentiary hearing will be required to ascertain the meaning of paragraph 5.
 
 [1]
 

 REVERSED and REMANDED.
 

 TORPY and LAWSON, JJ., concur.
 

 [1]
 

 . Given the remand, the parties and the trial court may also need to revisit the findings concerning the unpaid portion of Former Wife’s equitable share of the marital home. The trial court referred to this as "lump sum alimony” in finding Former Husband in contempt, but the agreement appears to provide differently.