IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
May 24, 2012 Session

# BEACH COMMUNITY BANK v. EDWARD A. LABRY, III, ET AL.

**Appeal from the Circuit Court for Shelby County**
**No. CT-005144-09, Div. 5-J      Kay S. Robilio, Judge**

**No. W2011-01583-COA-R3-CV - Filed June 15, 2012**

This case involves personal guaranties on a loan to purchase real estate. The Appellants entered into a partnership for the purpose of buying and selling real estate. The partnership obtained a loan in the amount of $2,611,000.00 to purchase real property located in Florida. The Appellants each signed a personal guaranty on the loan in favor of the Appellee bank. By the express terms of the guaranties, the Appellants guaranteed "up to a principle amount of $795,600.00." The partnership defaulted on the loan and the bank sued to enforce the guaranties. The Appellants answered that the guaranties were joint and several and that, because they were only 30% owners of the partnership, they could only be liable for 30% of the amount of the defaulted loan. In addition, the Appellants argued that the bank breached the covenant of good faith in failing to foreclose on the subject property. The trial court found that, under Florida law, the guaranties were not ambiguous, but were separate guaranties holding each Appellant separately liable for $795,600.00. The trial court also awarded interest on the entire debt. We affirm the trial court's determination that the guaranties unambiguously require each Appellant to be separately liable for $795,600.00, but hold that the term regarding interest is ambiguous. Accordingly, we reverse the grant of summary judgment on this issue and remand to the trial court for the consideration of parole evidence regarding the amount of interest and fees chargeable to the Appellants. Affirmed in part, reversed in part and remanded.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Circuit Court Affirmed in Part; Reversed in Part; and Remanded**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J.,W.S., and DAVID R. FARMER, joined.

Daniel W. Van Horn and Michael C. McLaren, Memphis, Tennessee, for the appellants, William B. Benton and J. Kevin Adams.

John B. Philip, Memphis, Tennessee, for the appellee, Beach Community Bank.

## OPINION

## I. Background

In the early 2000's, two separate partnerships, Mosaic Capital Partners ("Mosaic") and 474 Club, LLC ("474 Club") joined together to create RB 286, an entity formed for the sole purpose of purchasing, developing, and selling real estate located in Rosemary Beach, Florida. Edward A. Labry, III,[1] and Defendants/Appellants J. Kevin Adams, and William B. Benton (together with Mr. Adams, "Appellants") are members of 474 Club, which owns a 30% interest in RB 286.

The RB 286 partnership entered into an operating agreement, which provided that the investors may be required to enter into appropriate guaranty[2] agreements in order to obtain financing for the venture, but stated that "Investor shall in no event be obligated to guarantee any portion of the Company's indebtedness in excess of Investor's Percentage." The Appellants allege that the Bank was aware of this provision in the operating agreement.

On July 6, 2005, RB 286 executed and delivered, to Plaintiff/Appellee Beach Community Bank ("the Bank"), a Universal Note in the principle amount of $2,611,000.00. The Appellants allege that they had no involvement in the negotiation of the terms and conditions of the Bank's loan to RB 286. The Universal Note provided that RB 286 was obligated to make monthly payments to the Bank, with the balance due in 2013.[3]

---

[1] We note that Mr. Labry was originally a defendant to this suit in the trial court and an Appellant in this appeal. However, on April 10, 2012, Mr. Labry filed a stipulation voluntarily dismissing his appeal to this Court. Accordingly, this Court dismissed Mr. Labry's appeal on April 11, 2012. We only refer to Mr. Labry to offer background on the case.

[2] There is some disagreement as to the appropriate spelling of the term "guaranty" as used throughout this opinion. According to Bryan A. Garner's *A Dictionary of Modern Legal Usage*, the term "guaranty" is "used primarily in financial and banking contexts in the sense 'a promise to answer for the debt of another.'" Bryan A. Garner, *A Dictionary of Modern Legal Usage* 394 (2d ed. 1995). In contrast, the term "guarantee" applies "in the context of consumer warranties or other assurances of quality or performance." *Id.* Accordingly, throughout this opinion, we will refer to the document at issue as a "guaranty." We note, however, that the verb form in either the consumer or the financial setting is "to guarantee," which is used throughout this opinion. *Id.*

[3] RB 286 renewed the Universal Note, under essentially identical terms, on July 6, 2007, and again on November 6, 2007.

Also on July 6, 2005, Mr. Labry and the Appellants entered into personal guaranties in favor of the Bank. Although each of the Appellants signed separate guaranties, the documents were identical and were sent to the Appellants as one package. The guaranties state that each guarantor "absolutely and unconditionally guarantee[s] to you the payment and performance of each and every debt . . . up to the principle amount of $795,600.00 . . . ." The guaranties also provide that the guarantor "waive[s] . . . any right to require you to pursue any remedy or seek payment from any other person before seeking payment under this agreement, and all other defenses to the debt, except payment in full." Further, the guaranties provide that each guarantor is "obligated to pay according to the terms of this guaranty even if any other person has agreed to pay the borrower's debt."

It is undisputed that RB 286 stopped making payments toward the note in March of 2009. Accordingly, the Bank filed suit against the Appellants and Mr. Labry on November 3, 2009 to collect the sums allegedly owed under the guaranties. The parties filed cross motions for summary judgment. The Appellants' motion argued, *inter alia*, that the Bank was not entitled to recover anything under the guaranties because the Bank breached the covenant of good faith in failing to foreclose on the property. The Appellants alleged that the property had become encumbered with fees and assessments due to the non-development of the land within the two-year development window. According to the Appellants, the assessments would run with the land and could only be extinguished if the Bank foreclosed on the property, thus triggering a new two-year development window and erasing the current assessments.

Both Mr. Labry and the Appellants' depositions were attached to the Appellants' motion for summary judgment. According to the depositions, neither the Appellants, nor Mr. Labry, entered into any negotiations with the bank, met anyone from the bank, or participated in any way in the underlying loan. Mr. Labry testified that, not only did he not know anyone from the bank, but that he had also never met the members of Mosaic; furthermore, he testified that he did not read the guaranty when it was given to him to sign. There was also some confusion among the partners as to whether they had signed the guaranties in each other's presence, or not.

The trial court heard oral argument on March 9, 2011. During the hearing, the trial court orally ruled that the guaranties unambiguously required each Appellant to be liable for a separate $795,600.00. In addition, the court ordered that the Appellants were responsible for all interest and fees on the underlying debt. Accordingly, the trial court indicated that that it would grant summary judgment in favor of the Bank. Counsel for the Bank was directed to draft the order.

The parties returned to court on March 10, 2011, seeking clarification as to the trial

court's ruling regarding fees and interest. Specifically, counsel for the Appellants stated that he had been confused the previous day when discussing interest and was not aware that the court had awarded interest on the entire debt, rather than on the amount guaranteed. The trial court then directed that the parties submit competing orders. Over Appellants' objections, on March 28, 2011, the trial court adopted the order proposed by the Bank. The order provides that the guaranties unambiguously hold each of the Appellants separately liable for "$795,600.00 plus accrued interest, attorney fees, cost of collection and other expenses." Accordingly, each Appellant was held liable for a total amount of $1,918,229.50,[4] provided that the total amount collected from the Appellants should not exceed the total amount owed by RB 286. The order also provided that the trial court denied the Appellants' motion for summary judgment on the ground that the Bank breached the covenant of good faith.

Appellants filed a motion to alter or amend on April 26, 2011, which was denied on June 3, 2011. The Appellants timely appealed.[5]

## II. Issues Presented

---

[4] This amount represents the total amount that could be charged to each Appellant as determined by the trial court: the principle amount of $795,600.00 due under the guaranties, as well as interest, fees, costs of collection, attorney fees, and other expenses on the full amount of the underlying debt.

[5] As a point of practice, we note that the appellate record contains voluminous, extraneous materials. It is, of course, incumbent upon the Appellant to prepare an adequate record for our review. Tenn. R. App. P. 24(b). However, in preparing the record, the Appellant should not lose sight of the other mandates contained in Tennessee Rule of Appellate Procedure 24. We specifically refer the parties to Tennessee Rule of Appellate Procedure 24(a), concerning the content of the appellate record. This Rule provides, in relevant part that:

> The following papers filed in the trial court are excluded from the record:
>
>   . . . (2) all papers relating to discovery, including depositions, interrogatories and answers thereto. . . and all notices, motions or orders relating thereto. . . . No paper need be included in the record more than once.

Tenn. R. App. P. 24(a). Had the parties adhered to this rule regarding the exclusion of discovery and duplicate filings, our record would have been more streamlined and the interest of judicial economy would have been better served. Because we very often see extraneous filings in the records, we take this opportunity to remind our future parties that they should endeavor to adhere to the rules when submitting records to this Court.

The Appellants raise the following issues, taken from their brief:

1. Whether the trial court complied with its Rule 56.04 obligation to provide the parties with the legal grounds upon which it granted summary judgment to the Bank and denied summary judgment to the Appellants?

2. Whether the trial court erred in interpreting the language of the guaranties to mean that Appellants guaranteed $795,600.00 worth of partnership debt?

3. Whether the trial court erred in finding that the guaranties were separate and individual, rather than collective or joint and several?

4. Whether the trial court erred in finding that Appellants owed interest and costs to the Bank on the full amount of the underlying debt?

5. As a matter of Florida law, whether the trial court erred in finding that the Bank did not breach the covenant of good faith?

6. As a matter of Florida law, whether the trial court erred in finding that the there was a meeting of the minds between the Bank and the Appellants?

### III. Standard of Review[6]

A trial court's decision to grant a motion for summary judgment presents a question of law. Our review is therefore *de novo* with no presumption of correctness afforded to the trial court's determination. **Bain v. Wells,** 936 S.W.2d 618, 622 (Tenn. 1997). This Court must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied. **Abshure v. Methodist Healthcare–Memphis Hosps.**, 325 S.W.3d 98, 103 (Tenn. 2010).

When a motion for summary judgment is made, the moving party has the burden of showing that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. The moving party may accomplish this by either: (1) affirmatively negating an essential element of the non-moving party's claim; or (2) showing that the non-moving party will not be able to prove an essential element at trial. **Hannan v. Alltel Publ'g Co**., 270 S.W.3d 1, 8-9 (Tenn. 2008). However, "[i]t is not enough for the moving party to challenge the nonmoving party to 'put up or shut

[6] It is undisputed that the guaranties at issue in this case provide that, in any action to enforce the guaranties, Florida substantive law will apply. As a rule, Tennessee courts will honor a contractual choice of law provision, **Goodwin Bros. Leasing, Inc. v.. H & B**, Inc., 597 S.W.2d 303, 306 (Tenn. 1980), and there is no dispute in the instant matter that the subject choice of law provision is valid and enforceable. However, it is well-settled that this Court will apply is own procedural rules. *See* **Sons of Confederate Veterans, Inc. v. Sweeney**, No.M2006-00116-COA-R3-CV, 2007 WL 1135459, at *6 (Tenn. Ct. App. April 16, 2007) (citing **In re Stalcup's Estate**, 627 S.W.2d 364, 368 (Tenn. Ct. App. 1981)). Accordingly, we apply Tennessee's summary judgment standard and all other applicable procedural rules.

up' or even to cast doubt on a party's ability to prove an element at trial." *Id*. at 8. If the moving party's motion is properly supported, "The burden of production then shifts to the nonmoving party to show that a genuine issue of material fact exists." *Id.* at 5(citing *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)). The non-moving party may accomplish this by: "(1) pointing to evidence establishing material factual disputes that were overlooked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for the trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P., Rule 56.06." *Martin v. Norfolk Southern Railway. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008) (citations omitted).

When reviewing the evidence, we must determine whether factual disputes exist. In evaluating the trial court's decision, we review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003). If we find a disputed fact, we must "determine whether the fact is material to the claim or defense upon which summary judgment is predicated and whether the disputed fact creates a genuine issue for trial." *Mathews Partners*, 2009 WL 3172134 at *3(citing *Byrd*, 847 S.W.2d at 214). "A disputed fact is material if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Byrd*, 847 S.W.2d at 215. A genuine issue exists if "a reasonable jury could legitimately resolve the fact in favor of one side or the other." *Id.* "Summary Judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion." *Landry v. South Cumberland Amoco, et al*, No. E2009-01354-COA-R3-CV, (Tenn. Ct. App. March 10, 2010) (citing *Carvell v. Bottoms,* 900 S.W.2d 23 (Tenn. 1995)).

"When considering the evidence, the reviewing court must consider the evidence in a light most favorable to the non-moving party and must resolve all reasonable inferences in the nonmoving party's favor." *King v. Betts*, 354 S.W.3d 691, 712 (Tenn. 2011) (citing *B & B Enters. of Wilson Cnty., LLC v. City of Lebanon*, 318 S.W.3d 839, 845 (Tenn. 2010).

At this stage, the non-movant's evidence is taken as true, and the trial judge is not to weigh the evidence. *See McCarley v. West Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998). "Summary judgment procedure is not a substitute for trial. It is only when there is no disputed issue of material fact that a summary judgment should be granted. If such fact issue is present, the matter must not be resolved by a battle of affidavits, but must be resolved by a trial on the merits." *Stone v. Hinds*, 541 S.W.2d 598, 599 (Tenn. Ct. App. 1976).

## IV. Analysis

## A. Trial Court's Findings

The Appellants first argue that the trial court erred in requesting that counsel for the Bank prepare written findings of fact and conclusions of law without giving a sufficient basis upon which to make those findings. Rule 56.04 of the Tennessee Rules of Civil Procedure provides that, when deciding a motion for summary judgment, "[t]he trial court shall state the legal grounds upon which the court denies or grants the motion, which shall be included in the order reflecting the court's ruling."

In this case, the trial court orally ruled that the guaranties unambiguously provided that each Appellant was separately responsible for $795,600.00 plus the full interest on the underlying debt. Accordingly, the trial court directed counsel for the Bank to prepare an order. The following day, March 10, 2011, the Bank submitted a proposed order for the trial court to review. The trial court further requested that counsel for the Appellants draft a proposed order. Approximately three weeks later, on March 28, 2011, the trial court entered an order adopting the Banks' findings verbatim.

Prior to the adoption of the Tennessee Rules of Civil Procedure, the Tennessee Supreme Court held that the trial court should not adopt party-prepared findings of fact and conclusions of law. In **Nashville, Chattanooga, & St. Louis Railway Co. v. Price**, 148 S.W. 219 (Tenn. 1911), the trial judge refused to reduce his decision to writing and required counsel for the winning party to prepare the findings of fact. **Id.** at 220. The Supreme Court reversed, concluding that the trial court's procedure was impermissible. **Id.** The court stated that "[t]he preparation of such a finding, being a matter of so much importance and a high judicial function, cannot properly be intrusted to counsel." **Id.** The court reasoned that attorneys "have a natural bias with respect to cases in which they are engaged that makes it well-nigh impossible for them to fairly and fully present all the facts as the judge would do." **Id.** The court further explained that factual findings are "accorded the highest dignity" by appellate courts and should therefore represent an independent conclusion of an unbiased judge. **Id.**

However, after the adoption of the Tennessee Rules of Civil Procedure, the Supreme Court, in **Delevan-Delta Corp. v. Roberts**, 611 S.W.2d 51 (Tenn. 1981), recognized that "the thorough preparation of suggested findings and conclusions by able counsel can be of great assistance to the trial court." **Id.** at 52–53. Accordingly, the Supreme Court held that "although it is improper for the trial court to require counsel to prepare findings, it is permissible and indeed sometimes desirable for the trial court to permit counsel for any party to submit proposed findings and conclusions." **Id.** at 53.

The decision in **Roberts** was discussed in detail by this Court in **Madden Phillips**

***Const., Inc. v. GGAT Development Corp.***, 315 S.W.3d 800 (Tenn. Ct. App. 2009). According to this Court:

> The ***Roberts*** court offered guidance to lower courts when establishing findings of fact. The court maintained a clear preference for factual findings that are a product of the judge's own labor. [***Delevan-Delta Corp. v. Roberts***, 611 S.W.2d 51, 53 (Tenn. 1981).] The ***Roberts*** court recognized, however, that other procedures sufficiently maintain the independence and impartiality of courts that adopt party-prepared findings. The court stated that trial judges may rely on party-prepared findings, so long as they carefully review proposed findings to ensure that the findings reliably reflect the court's opinion based on the testimony and evidence produced at trial. ***Id.*** The court also recognized a need to ensure that the proposed findings dispose of all relevant issues. ***Id.*** The court advised trial courts to "ascertain that [party-prepared findings] adequately dispose of all material issues, and to assure that matters not a proper part of the determination have not been included." ***Id.***

***Id.*** at 810–11.

Appellants point out that the order entered on the motions for summary judgment provide that the trial court found the Appellants' argument that the Bank breached the covenant of good faith to be without merit. However, the Appellants note that the trial court made no such oral findings during the motion hearings. Although we agree that this practice is not favored, we cannot agree that this procedure constitutes reversible error. From what we can glean from the record, the trial court was given a copy of the Bank's proposed findings. Only after reviewing those findings did the court enter the order. Likewise, in ***Airline Construction, Inc. v. Barr***, 807 S.W.2d 247 (Tenn. Ct. App. 1990), this Court held that the trial court did not err in requesting the parties to submit proposed findings to the court and eventually adopting verbatim the order that "best represent[ed] the opinion of the [c]ourt." ***Id.*** at 253. Here, the trial court had ample opportunity to review the proposed order. Nothing in the record indicates that the order entered does not reflect the trial court's view of the case. Accordingly, we hold that the trial court's decision to adopt the Bank's findings is not reversible error.[7]

---

[7] From our research, we note that, in many cases where a party challenges the trial court's adoption of party-prepared findings, the challenging party asks that the party-prepared findings not be given a

(continued...)

## B. Principle Amount Guaranteed

Appellants next argue that the trial court erred in interpreting the language of the guaranties to mean that each of the Appellants guaranteed $795,600.00 of partnership debt. As discussed by the Fifth Circuit in ***Mohasco Industries, Inc. v. Maxwell Co.***, 425 F.2d 436 (5th Cir. 1970):

> In construing the guaranty we are to be guided by the decisions of the Florida courts. It is held by them that the obligations of a guarantor should be strictly construed in favor of the guarantor when the contract of guaranty is free from ambiguity. ***Scott v. Tampa***, 158 Fla. 712, 30 So.2d 300 [(Fla. 1947)], cert. den. 332 U.S. 790, 68 S.Ct. 99, 92 L.Ed. 372. If ambiguous, it should be construed against the draftsman. ***Brandon v. Pittman***, 117 Fla. 678, 158 So. 443 [(Fla. 1934)]. It is also held that parol evidence should be considered only when the contract is ambiguous. ***Sears v. Talcott***, Fla. App., 174 So.2d 776 [(Fla. Dist. Ct. App. 1965)]; ***Friedman v. Virginia Metal Products Corp.***, Fla., 56 So.2d 515 [(Fla. 1952)]. The fact that an erroneous construction has been given to the contract by the parties will not preclude the Court from giving the instrument its true construction. ***City of Tampa v. W.L. Cobb Const. Co.***, 135 Fla. 630, 185 So. 330 [(Fla. 1938)]; ***People's Savings Bank & Trust Co. v. Landstreet***, 80 Fla. 853, 87 So. 227 [(Fla. 1943)].

***Mohasco Industries***, 425 F.2d at 438. Accordingly, we must look to the plain language of the guaranties to determine whether the provision regarding the amount of debt guaranteed by the Appellants is ambiguous.

The guaranties signed by the Appellants are identical except for the name of the individual guarantor on each document. The guaranties state that:

---

[7](...continued)
presumption of correctness on appeal. *See **Madden***, 315 S.W.3d at 809; ***Barr***, 807 S.W.2d at 253. However, this is an appeal from the grant of a motion for summary judgment. Accordingly, there must be no material factual disputes and the decision must be solely based on the law. ***Landry v. South Cumberland Amoco, et al***, No. E2009-01354-COA-R3-CV, (Tenn. Ct. App. March 10, 2010) (citing ***Carvell v. Bottoms,*** 900 S.W.2d 23 (Tenn. 1995)). Indeed, under this standard of review, no presumption of correctness attaches to the trial court's conclusions of law and our review is *de novo*. ***Blair v. Brownson***, 197 S.W.3d 681, 684 (Tenn. 2006) (citing ***Bowden v. Ward***, 27 S.W.3d 913, 916 (Tenn. 2000)).

I absolutely and unconditionally guarantee to you the payment and performance of each and every debt, of every type and description, that the borrower may now or at any time in the future owe you up to the principle amount of $795,600.00 plus accrued interest, attorneys' fees, and collection costs referable thereto (when permitted by law) and all other amounts agreed to be paid under all agreements evidencing the debt and securing payment of the debt. You may, without notice, apply this guaranty to such debts of the borrower as you may select from time to time.

DEFINITIONS – As used in this agreement the terms, "I," "we," and "my" mean all persons signing this guarantee agreement, individually and jointly, and their heirs executors, administrators, and assigns.

The term "debt" means all debts, liabilities, and obligations of the borrowing (including, but not limited to, all amounts agreed to be paid under the terms of any notes or agreements securing the payment of any debt, liability or obligation, overdrafts, letters of credit, guaranties, advances for taxes, insurance, repairs or storage, and all extensions, renewals, refinancings and modifications of those debts) whether now existing or created or incurred in the future, due or to become due, or absolute or contingent.

\* \* \*

OBLIGATIONS INDEPENDENT— I agree that I am obligated to pay according to the terms of this guaranty even if any other person has agreed to pay the borrower's debt. . . .

I will remain obligated to pay on this guaranty even if any other person who is obligated to pay the borrower's debt, including the borrower, has such obligation discharged in bankruptcy, foreclosure, or otherwise discharged by law. . . .

WAIVER – I waive presentment, demand, protest, notice of dishonor, and notice of acceptance of the guaranty. I also waive, to the extent permitted by law, all notices, all defenses, and claims that the borrower could assert, any right to require you to pursue any remedy or seek payment from any other person before seeking payment under this agreement, and all other defenses to the debt, except payment in full. You may without

notice to me and without my consent enter into agreements with the borrower from time to time for purposes of creating or continuing the borrower's debt as allowed by this guaranty. I agree that I will be liable, to the fullest extent permitted by applicable law, for any deficiency remaining after foreclosure (or repossession) and sale of any collateral without regard to whether borrower's obligation to pay such deficiency is discharged by law. If any payments on the debt are set aside, recovered or required to be returned in the event of the insolvency, bankruptcy, or reorganization of the borrower, my obligations under this guaranty will continue as if such payments had never been made.

According to the plain language of the guaranties, each Appellant "absolutely and unconditionally" guaranteed "each and every debt, of every type and description, that the borrower may now or at any time in the future owe [the Bank] up to the principle amount of $795,600.00." Appellants first argue that the guaranties unambiguously provide that the Appellants have only guaranteed debts in which the underlying principle is less than $795,600.00. Under this theory, the Appellants are not liable under the guaranties because there are no underlying debts with a principle of $795,600.00 or less. In interpreting a contract, however, Florida law provides that "an interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect." *Belen School, Inc. v. Higgins*, 462 So.2d 1151, 1153 (Fla. Ct. App. 1984); *see also* *Paddock v. Bay Concrete Indus., Inc.*, 154 So.2d 313, 315–16 (Fla. Dist. Ct. App. 1963) ("Looking to the other provisions of a contract and to its general scope, if one construction would lead to an absurd conclusion, such interpretation must be abandoned and that adopted which will be more consistent with reason and probability."). Appellants' argument that the guaranty only applies to underlying debts of a principle amount below $795,600.00 essentially renders the entire guaranty of no effect. According to this construction, the Appellants have guaranteed nothing because there were no debts entered into by the borrower (i.e., RB 286) with a principle amount below $795,600.00. In addition, the guaranty goes on to state that "if my liability is limited to a stated principle amount (plus other agreed charges) you may allow the borrower to incur indebtedness in excess of the specified amount." Clearly the guaranty contemplates that the borrower (i.e., RB 286) may incur debts in excess of the amount guaranteed. Indeed, in this case, RB 286 incurred a debt of $2,611,000.00. However, the guaranty provides that the guarantor agrees to guarantee only a portion of that debt, in this case, $795,600.00. Based on the foregoing, we cannot conclude that the guaranties apply only to debts in which the underlying principle is below $795,600.00.

The Appellants argue, in the alternative, that the relevant provision is ambiguous and, as such, the court should consider parole evidence showing that the Appellants intended only to enter into a joint guaranty making the Appellants collectively liable for the total amount of $795,600.00. Under this theory, the Appellants argue that they are jointly and severally liable for only a total amount of $795,600.00. To support this argument, the Appellants cite *Sims v. New Falls Corp.*, 37 So.3d 358 (Fla. Dist. Ct. App. 2010), which holds that, when the words in a contract are unclear, the courts may employ the doctrine of mutual construction. *Id.* at 361. The doctrine of mutual construction provides that "two documents executed by the same parties as part of a single transaction regarding the same subject matter must be read and construed together." *Id.* (citing 37 Fla. Jur. 2d *Mortgages and Deeds of Trust* § 94 (2004)). The Appellants argue that mutual construction applies because the guaranties were sent in one package and deal with the same subject matter. However, the *Sims* court points out that the doctrine of mutual construction "may not be invoked to override the clear and unambiguous expression of agreement of the parties to a transaction." *Sims*, 37 So.3d at 361 (citing *McGhee Interests, Inc. v. Alexander Nat'l Bank*, 135 So. 545, 547 (Fla. 1931)); *see also Anderson v. Trade Winds Corp.*, 241 So.2d 174, 177 (Fla. Dist. Ct. App. 1970) ("If a written contract in unambiguous terms expressed an unconditional guarantee, then the guarantee is absolute and the guarantor's liability cannot be limited or qualified by parole evidence as to a prior or contemporary understanding.").

After thoroughly reviewing the guaranties at issue, we hold that there is no ambiguity that would allow us to invoke the doctrine of mutual construction. The Appellants argue that, because the guaranties define guarantors as "all persons signing this guaranty agreement, individually and jointly" the guaranties are ambiguous as to whether the guaranties are individual or joint obligations of the Appellants. We disagree. At the top of each guaranty is a box entitled "Guarantor's Name and Address." Below this box, the contract states "I" [as used throughout the contract] includes each guarantor above, jointly and severally." Accordingly, the obligations of each guaranty apply only to those parties listed in the aforementioned box. Because each guaranty contains the name and address of only one Appellant in the prescribed box, rather than a list of the Appellants, the plain language of the guaranties unambiguously provide that each guaranty constitutes a separate obligation on the part of each Appellant. In addition, the guaranties signed by the Appellants contain multiple signature lines evidencing that more than one party could feasibly have signed a single guaranty. Instead, each of the Appellants signed separate guaranties, making them separately liable for their own contractual obligations. Courts in Florida have concluded that parties entered into separate contracts in similar situations. In *Gowni v. Makar*, 940 So.2d 1226 (Fla. Dist. Ct. App. 2006), the Florida District Court of Appeals described a single settlement agreement, in which two parties agreed to pay certain debts, on separate sheets of paper within the agreement, as separate obligations. The two parties both agreed to be liable to the defendant for $80,000. The court described the notes as included in one page-numbered

document and identical in terms and payment schedule; however, the court stated that, because neither party signed as co-maker or obligor on the other party's note, the notes "are clearly individual notes." In this case, the Appellants likewise signed separate guaranties on identical terms. Further, unlike in **Gowni**, the documents in this case were not attached to one another, nor were they numbered to reflect sequence. Based on the foregoing, we affirm the trial court's determination that the guaranties at issue provide that each Appellant is separately liable for up to $795,600.00 in debts owed by RB 286.[8]

## C. Interest and Fees

We next turn to the Appellants' argument that the trial court erred in finding that the interest provision of the contract is not ambiguous and awarding interest and costs to the Bank on the full amount of the underlying debt. We first consider the language of the guaranty. As previously discussed, the guaranty provides that each guarantor guaranties:

> [E]ach and every debt, of every type and description, that the borrower may now or at any time in the future owe you up to the principle amount of $795,600.00 ***plus accrued interest, attorneys' fees, and collection posts referable thereto (when permitted by law) and all other amounts agreed to be paid under all agreements evidencing the debt and securing payment of the debt.***

(emphasis added). Appellants argue that the "referable thereto" language means that each guarantor is only liable on the interest and fees associated with his own $795,600.00

---

[8] We note that the Appellants' brief argues that this Court should consider the opinion of **Whitney Nat'l Bank v. Labry et al.**, No. 09-cv-02518-STA-dkv, 2011 WL 1211606 (W.D. Tenn.), as persuasive authority that the guaranties at issue are joint and several. In **Whitney**, the federal district court ruled that different guaranties in which the Appellants agreed to guarantee 30% of the underlying debt were joint and several. However, we note that the guaranties in **Whitney** contain language materially different from the language at issue in this case. The decision in **Whitney** is, therefore, inapplicable to the case-at-bar. In addition, the decision in **Whitney** is an unpublished decision of a federal district court, and is, therefore, not binding on this Court. *See* **Leggett v. Duke Energy Corp.**, 308 S.W.3d 843, 871 (Tenn. 2010) ("[B]ecause lower federal courts exercise no appellate jurisdiction over state tribunals, decisions of lower federal courts are not conclusive on state courts.") (quoting **United States ex rel. Lawrence v. Woods**, 432 F.2d 1072, 1075–76 (7th Cir. 1970)). Further, the Appellants did not attach this unpublished opinion as an appendix to their brief, as required by Rule 12 of the Tennessee Rules of the Court of Appeals. *See* Tenn. R. Ct. App. 12(a) ("No opinion of any court that has not been published shall be cited in papers filed in this Court unless a copy thereof has been furnished to this Court and to adversary counsel. Such unpublished opinions shall be included as appendices to any brief or other paper filed with this Court."). Accordingly, we decline to follow the holding in **Whitney**.

guaranty. In contrast, the Bank points to the "all other amounts agreed to be paid under all agreements evidencing the debt" language to argue that the interest and fees on the entire underlying debt are chargeable to each guarantor.

A provision in a contract is ambiguous if it "is susceptible to two different interpretations, each one of which is reasonably inferred from the terms" of the agreement. *McClune v. McClune*, 79 So.3d 194, 197 (Fla. Dist. App. Ct. 2012) (citing *Miller v. Kase*, 789 So.2d 1095, 1097–98 (Fla. Dist. App. Ct. 2001)); *see also* *Blanton v. City of Pinellas Park*, 887 So.2d 1224, 1230 (Fla. 2004) ( "Ambiguity suggests that reasonable persons can find different meanings in the same language."). In this case, both the Appellants' and the Bank's arguments are based on the plain language of the provision. Indeed, the language indicating that the interest and fees are "referable thereto" the $795,600.00 guaranty clearly conflicts with the language indicating that interest and fees relate to "all other amounts agreed to be paid."

In a case involving a statutory settlement proposal in an insurance case, *Saenz v. Campos*, 967 So.2d 1114 (Fla. Dist. Ct. App. 2007), the Florida District Court of Appeals held that a settlement proposal, which stated that it intended to "resolve all claims" was ambiguous because the proposal contained conflicting language suggesting that the settlement was meant to satisfy only "the claims raised in the suit." *Id.* at 1116–17. The court rejected the dissent's argument that the proposal was not ambiguous as the plain language provided that the proposal would resolve both "all claims" and "the claims raised in the suit," holding instead that the inclusion of both a broad and narrow provision created a patent ambiguity. *Id.* Likewise in this agreement, the interest provision contains conflicting language suggesting two different amounts upon which interest and fees may be calculated. One interpretation makes only the interest referable to the guaranteed amount chargeable to each Appellant. The other interpretation makes the interest on the entire underlying debt chargeable to each Appellant. Because of the conflicting language, this provision is susceptible to more than one reasonable interpretation. Accordingly, we reverse the trial court's determination that the provision is unambiguous and conclude that there is an ambiguity as to what portion of the debt upon which the Appellants owe interest and fees. Due to the ambiguity, parole evidence is admissible to determine the meaning of the interest and fees provision. *See* *Sears v. Talcott*, 174 So.2d 776, 778 (Fla. Dist. Ct. App. 1965); *Friedman v. Virginia Metal Products Corp.*, Fla., 56 So.2d 515, 516–17 (Fla. 1952). The trial court in this case concluded that the above provision was unambiguous, declined to consider parole evidence on this issue and granted summary judgment in favor of the Bank. It is well-settled that courts should grant summary judgment "only when both the facts and the conclusions to be drawn from the facts permit a reasonable person to reach only one conclusion." *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). Due to the fact that the ambiguity in this provision makes it susceptible to more than one interpretation, we hold that

summary judgment was inappropriate in this case. *See **Byrd v. Hall***, 847 S.W.2d 208, 215 (Tenn. 1993) (noting that summary judgment is inappropriate when "a reasonable jury could legitimately resolve that fact in favor of one side or the other"). Consequently, we reverse the grant of summary judgment and remand to the trial court for consideration of parole evidence regarding the amount of interest and fees owed by the Appellants under the guaranties, which are to be strictly construed against the Bank. *See **Mohasco Industries, Inc. v. Maxwell Co.***, 425 F.2d 436 (5th Cir. 1970) (citing ***Brandon v. Pittman***, 117 Fla. 678, 158 So. 443 (Fla. 1934)).

## D. Covenant of Good Faith

The Appellants next argue that the trial court erred in holding that there was no breach of the covenant of good faith in this case. Specifically, the Appellants assert that the Bank breached its covenant of good faith in failing to foreclose on the property, thus allowing the property to become encumbered. The Appellants also argue that this inaction by the Bank constitutes the failure to mitigate the Bank's damages. Finally, the Appellants argue that the Bank breached the covenant of good faith in failing to provide notice to the Appellants that the Bank would be seeking payment from them as guarantors rather than foreclosing on the property.

Pursuant to Florida law, the covenant of good faith is implied in every contract. See ***County of Brevard v. Miorelli Eng'g, Inc.***, 703 So.2d 1049, 1050 (Fla. 1997) ("[E]very contract includes an implied covenant that the parties will perform in good faith."); *see also **Ernie Haire Ford, Inc. V. Ford Motor Co.***, 260 F.3d 1285, 1291 (11th Cir. 2001) (citing ***Burger King Corp. v. Weaver***, 169 F.3d 1310, 1315 (11th Cir.), cert. dismissed 528 U.S. 948, 120 S.Ct. 370, 145 L.Ed.2d 287 (1999)). However, the implied covenant of good faith cannot override an express contractual term. *See **Ins. Concepts And Design, Inc. v. Healthplan Servs., Inc.***, 785 So.2d 1232, 1234 (Fla. Dist. Ct. App. 2001). Instead, the implied covenant "attaches . . . to the performance of a specific contractual obligation." *Id.* at 1235 (quoting ***Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc.***, 162 F.3d 1290, 1314 (11th Cir. 1998)).

The Appellants point to two provisions of the contract, which they argue require the Bank to foreclose on the property prior to seeking to enforce the guaranties. Both provisions provide that the guarantor will be obligated to pay "any deficiency remaining after foreclosure" on the subject property. The Appellants use these provisions to argue that the Bank had a contractual obligation to foreclose on the property prior to seeking payment on the guaranties. We disagree. The provisions cited by the Appellants simply provide that the guarantors are liable for the remaining debt should the Bank choose to foreclose on the property. However, the guaranties clearly and unambiguously provide that the Bank is not

-15-

required to take such action prior to seeking payment from the guarantors, nor must the Bank provide notice of its intent to do so. As discussed above, the plain language of the contract provides:

> I [] waive, to the extent permitted by law, all notices, all defenses, and claims that the borrower could assert, any right to require you to pursue any remedy or seek payment from any other person before seeking payment under this agreement, and all other defenses to the debt, except payment in full. . . . I agree that I will be liable, to the fullest extent permitted by applicable law, for any deficiency remaining after foreclosure (or repossession) and sale of any collateral without regard to whether borrower's obligation to pay such deficiency is discharged by law.

This provision clearly states that the Appellants waive notice and foreclosure. If this Court were to hold that, notwithstanding this broad waiver provision, the Bank had a duty to provide notice or foreclose on the property, the waiver provision of the contract would be rendered meaningless. *See **Raytheon Subsidiary Support Co., Inc. v. Crouch***, 548 So.2d 781, 783 (Fla. Dist. Ct. App. 1989) (noting that Florida law favors an interpretation that does not render any part of the contract "of no effect"). Further Florida law provides that when a party has been granted an absolute guaranty in its favor, "the person in whose favor the guaranty runs has no duty to first pursue the principal before resorting to the guarantors." ***Anderson v. Trade Winds Corp.***, 241 So.2d 174, 177 (Fla. Dist. App. Ct. 1970). The guaranties in this case state that they are "absolute[] and unconditional[]." In a recent case, ***Fort Plantation Investments, LLC v. Ironstone Bank***, 85 So.3d 1169 (Fla. Dist. Ct. App. 2012), the Florida District Court of Appeals held that a similar guaranty, which provided that the guarantor "absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness," was unambiguously an absolute guaranty. ***Id.*** at 1170. Because the guaranty was absolute, the ***Fort Plantation*** Court concluded that the bank in the case had no duty to foreclose on the property. ***Id.*** Based on the foregoing law, we must likewise conclude that the Bank in this case had no duty under the express terms of the contract to foreclose on the property or send notice to the Appellants of their intent not to do so, regardless of whether the Bank's inaction led to the property being encumbered.

Appellants also argue that the Bank had a duty to protect the collateral from encumbrances, which can only be accomplished through foreclosure. However, Florida law is clear that "under an absolute and unconditional contract of guaranty . . . it is no defense [to collection under the guaranty] that the creditor has lost security or has been negligent in regard to protection of the collateral." ***Von Dunser v. Southeast First Nat. Bank of Miami***,

-16-

367 So.2d 1094, 1096 (Fla. Dist. Ct. App. 1979) ( holding that the argument "that the bank has caused impairment of collateral, is an inadequate defense; by the express and unambiguous terms of the contract of guaranty appellant waived any duty on the part of the bank with respect to collateral held") (citing *Fegley v. Jennings*, 32 So. 873, 874 (Fla. 1902)). Accordingly, the Bank was under no obligation to protect the collateral in this case.

As previously discussed, the covenant of good faith "must relate to the performance of an express term of the contract and is not an abstract and independent term of a contract which may be asserted as a source of breach when all other terms have been performed pursuant to the contract requirements." *Ament v. One Las Olas, Ltd.*, 898 So.2d 147, 149 (Fla. Dist. Ct. App. 2005). Because the Appellants have not pointed to a specific provision in the guaranties that the Bank has failed to perform, the Appellants' argument that the Bank breached the implied covenant of good faith must fail as a matter of law. Accordingly, we affirm the decision of the trial court that the Bank did not breach the covenant of good faith with respect to these guaranties.

### E. Meeting of the Minds

Finally, the Appellants argue that the trial court erred in finding that there was a meeting of the minds in this case. It is well-settled pursuant to Florida law that "a meeting of the minds of the parties on all essential elements is a prerequisite to the existence of an enforceable contract." *Greater New York Corp. V. Cenvill Miami Beach Corp.*, 620 So.2d 1068, 1070 (Fla. Dist. Ct. App. 1993). The Appellants cite *King v. Bray*, 867 So.2d 1224 (Fla. Dist. Ct. App. 2004) for the proposition that where the parties have different views of a contract's material terms, there can be no meeting of the minds. *Id.* at 1227. However, the Appellants fail to include that the court in *King* held that a contract may only be unenforceable when the parties failed to reach a meeting of the minds, "based on an ambiguity in the contract." *Id.* Only once the contract is deemed ambiguous, can the court consider parole evidence regarding the parties' intentions. *Id.* at 1227–28 (noting that only after first concluding that the contract was ambiguous, did the trial court consider evidence of the parties' intentions); *see also* *Sears v. Talcott*, 174 So.2d 776, 778 (Fla. Dist. Ct. App. 1965); *Friedman v. Virginia Metal Products Corp.*, Fla., 56 So.2d 515, 516–17 (Fla. 1952). In addition, the court in *King* noted that a meeting of the minds "depends not on the agreement of two minds in one intention, but on the agreement of two sets of external signs—not on the parties having meant the same thing but on their having said the same thing." *King*, 867 So.2d at 1228 (citing *Robbie v. City of Miami*, 469 So.2d 1384 (Fla. 1985)). With regard to this issue, the Florida Supreme Court has held that

> Even though all the details are not definitely fixed, an agreement
> may be binding if the parties agree on the essential terms and

seriously understand and intend the agreement to be binding on them. A subsequent difference as to the construction of the contract does not affect the validity of the contract or indicate the minds of the parties did not meet with respect thereto.

***Blackhawk Heating & Plumbing Co. v. Data Lease Fin. Corp.***, 302 So.2d 404, 408 (Fla. 1974) (citation omitted).

In this case, we have held that the contract is unambiguous regarding the amount of debt guaranteed by each party. Accordingly, parole evidence is inadmissible to show the parties' contrary intentions. Here, the Appellants signed the guaranties without first negotiating, or even communicating, with the Bank. Because the guaranties are unambiguous, we will not consider evidence that the Appellants were ill-informed or confused by the guaranties, which the Appellants admittedly signed.

In contrast, we have held that the provision regarding interest is ambiguous and that parole evidence is admissible upon remand to interpret this provision. We note, however, that the contract clearly provides that the Appellants owe interest and fees to the Bank; the only ambiguity concerns on what amount the interest and fees accrue. In this case, we hold that the amount of interest and fees chargeable to the Appellants is not an essential term, a disagreement over which would justify rescission of the entire agreement. Here, the Appellants "seriously underst[ood] and intend[ed] the agreement to be binding on them." *See **Blackhawk***, 302 So.2d at 408. The construction of the interest provision does not, therefore, "affect the validity of the contract or indicate the minds of the parties did not meet with respect" to the entire contract. ***Id.*** Accordingly, we affirm the trial court's determination that there was a meeting of the minds in this case.

## V. Conclusion

The decision of the Circuit Court of Shelby County is affirmed in part, reversed in part and remanded to the trial court for further proceedings consistent with this opinion. Costs of this appeal are taxed one-half to Appellants J. Kevin Adams and William B. Benton, and their surety, and one-half to Appellee Beach Community Bank, for all of which execution may issue.

_____
J. STEVEN STAFFORD, JUDGE